ROBERT PETERSON AND WILLIAM PETERSON, DOING BUSINESS AS PETERSON BROTHERS, APPELLEES AND CROSS-APPELLANTS, V. NORTH AMERICAN PLANT BREEDERS, DOING BUSINESS AS MIGRO SEED COMPANY, A CORPORATION, APPELLANT AND CROSS-APPELLEE.

354 N.W.2d 625

Filed August 10, 1984.    No. 83-374.

Avery Gurnsey, and Charles L. House and Larry Norton of House, Norton & Mattix, for appellant.

David A. Domina and Jeffrey L. Hrouda of Domina Law Firm, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This is a suit for breach of express warranty and implied warranty of merchantability in the sale of seed corn. North American Plant Breeders, doing business as Migro Seed Company, defendant, appeals from an adverse $76,519.08 jury verdict and judgment in favor of plaintiffs, Robert Peterson and William Peterson, doing business as Peterson Brothers.

Plaintiffs are extensive farmers in the Rock County, Nebraska, area, where much of the land is sandy soil, sometimes called the Sandhills. The Peterson land here was irrigated from wells and four center pivots. The irrigation equipment revolved around each pivot, and all plantings were in circles.

Defendant's headquarters is in Mission, Kansas. It produces hybrid seeds, including the Migro SPX-8 variety. Hybrid seed corn is a product of scientific genetic cross-breeding of corn to produce a seed having desirable germination, growing, and production qualities intended by the producer.

In the spring of 1981 plaintiffs seeded four circles, alternating multiple rows of Migro SPX-8 with other seed varieties produced by four other companies. Plaintiffs

regularly kept and maintained records of the several plantings reflecting germination, cultivation, irrigation, fertilizer and herbicide applied, production, and expenses.

The corn crop progressed normally until July 23, 1981, when plaintiffs discovered that 65 to 70 percent of the Migro variety corn plants had broken off around the ear level. The rest of the corn crop of other varieties had minimal damage. The night before this discovery, there had been a thunderstorm which apparently was within the ordinary range of severity. The crop damage was promptly reported to the dealer, who notified defendant, according to his business custom. Plaintiffs continued to irrigate and otherwise uniformly nurture their total crop, including the Migro plants. The Migro variety corn plants continued to suffer stalk breakage, and by the time of harvest the Migro variety corn plants yielded only $19^1/_2$ bushels of corn per acre. The other varieties of corn on the same farmland yielded $113^3/_4$ bushels per acre.

Plaintiffs purchased the Migro seed corn from John Sandall (dealer), a neighboring farmer who acted as a Migro dealer and a dealer for other seed companies. Plaintiffs paid the dealer by offsetting the purchase price against an account Sandall owed to a fertilizer company owned by plaintiffs and their father. Prior to buying the seed, Robert Peterson studied advertising literature published by defendant, which, among other things, described Migro SPX-8 to have excellent stalk quality. Plaintiffs picked up the seed at Sandall's warehouse as they needed it for planting. Plaintiffs bought 102 bags, planted 77 bags on their farm, and the rest were planted on their father's farm. The bags came sealed with disclaimer tags attached, as follows: "LIMITED WARRANTY AND LIMITATION OF REMEDY. This product is sold by product description only. THERE ARE NO WARRANTIES, EXPRESSED OR IMPLIED, AND WARRANTIES OF MERCHANTABILITY AND FITNESS ARE EXPRESSLY DISCLAIMED AND EXCLUDED."

Plaintiffs' expert witness, an agronomist, testified that the cause of the breakage was the poor translocation of silica in the plant. Silica, being in heavy concentration in the Sandhills, is absorbed by the roots of the plant and distributed throughout

the plant; the damaged Migro plants had an overabundance of silica deposits at the ear level of the stalk in comparison to the silica level in the leaves. This gathering of silica in the stalk weakened the plants and contributed to their breakage. His opinion was that Migro SPX-8 was unsuitable for planting in the Sandhills.

Defendant's expert, a professor of plant breeding, said that corn plants reach a stage in their growth, about 8 weeks after planting, when, due to rapid growth, the plant stalks are brittle for a 3- to 4-day period. Different varieties of corn, even though planted on the same day, reach this stage at different times, thus explaining the confinement of the damage to one variety of hybrid and relating the damage to the storm.

Defendant assigns seven errors.

*Error 1 - Express Warranties*

Plaintiffs claimed that defendant had made and breached these express warranties that appeared in its sales literature furnished to them by Sandall:

    a. A hybrid specially bred for superb performance and tested throughout the corn belt . . . under a broad range of growing conditions.

    b. A hybrid with excellent stalk standability, outstanding heat and drought tolerance, good disease and insect resistance and a superior grain quality.

    c. An attractive looking, top yielding single-cross with proven consistency in a maturity range of 105—108 days, and exhibiting excellent stalk and root quality.

    d. A hybrid that would out-yield many longer season hybrids.

    e. A hybrid with very good emergence, excellent root strength and stalk quality, very good dry-down rapidity and excellent ear retention.

At the end of plaintiffs' case in chief, defendant moved for a directed verdict on the ground, among others, that plaintiffs had not shown that the literature contained any warranties; rather, it was merely seller's talk, or puffing.

In considering whether a directed verdict motion should be granted, the party against whom such a motion is aimed is entitled to have all controverted facts resolved in his favor and

to have the benefit of every reasonable inference from the evidence. *May v. Hall Co. L'stock Improvement Assn.*, 216 Neb. 476, 344 N.W.2d 629 (1984). The problem · with defendant's contention is that the question of the existence and scope of an express warranty is one of fact. Neb. U.C.C. § 2-313, comment 3 (Reissue 1980); *Lovington Cattle Feeders v. Abbott Lab.*, 97 N.M. 564, 642 P.2d 167 (1982); *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286 (6th Cir. 1982).

Section 2-313 provides in part:

(1) Express warranties by the seller· are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

. . . .

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

The question becomes whether the statements made by defendant are expressions of opinion or commendations of the goods or affirmations of fact.

The test adopted by many courts is well stated in *Overstreet v. Norden Laboratories, Inc., supra*:

The existence of an express warranty depends upon the particular circumstances in which the language is used and read. . . . A catalog description or advertisement may create an express warranty in appropriate circumstances. . . . *The trier of fact must determine whether the circumstances necessary to create an express warranty are present in a given case. . . . The test is "whether the seller*

*assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment."*
(Emphasis supplied.) *Id*. at 1290-91.

In connection with the fact question here, the sale of hybrid seed corn is unusual in that it is delivered to the ultimate buyer-user in sealed bags, inspection of the seed by the buyer will generally not reveal any of its growing qualities, and the first notice of the seed's worth and performance is after planting and well into the growing season. Consequently, in the absence of a prior planting experience or other reliable information, the buyer may be justified to rely on the claims of the producers as more than puffing; it is a fact question. Here, plaintiffs had no prior knowledge of or planting experience with Migro SPX-8. The express warranty issue was properly submitted to the jury.

*Error 2 - Implied Warranty of Merchantability and the Requirement of Privity of Contract*

*Error 6 - John Sandall Was an Independent Dealer*

These two errors are discussed together.

Neb. U.C.C. § 2-314 (Reissue 1980) provides in part:

(1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact

made on the container or label if any.

(3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

Sandall testified that he purchased the Migro seed from defendant, stored it in his warehouse in the original container bags, and then resold it to plaintiffs and other customers. The trial court denied defendant's proffered evidence that Sandall was an independent dealer and that disclaimers existed between them.

Defendant contends that privity of contract is an essential requirement between defendant seed producer and the ultimate buyer-user where a breach of warranty of merchantability is claimed and there is a claim of consequential damages for economic loss. We have not previously ruled on this issue.

We have held that an implied warranty that food products are wholesome may be asserted for personal injury against a remote manufacturer if the products are shown to have reached the consumer in the same condition in which they left the manufacturer. *Asher v. Coca Cola Bottling Co.*, 172 Neb. 855, 112 N.W.2d 252 (1961). Privity of contract has also been removed as a barrier to asserting an express warranty claim based upon statements made in advertising and other printed matters prepared by the manufacturer. *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 302 N.W.2d 655 (1981); *Hawkins Constr. Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973).

There is a split of authority on the question here presented. *State ex rel Western Seed v. Campbell*, 250 Or. 262, 442 P.2d 215 (1968), follows the traditional rule requiring privity of contract. *Hiles Co. v. Johnston Pump Co.*, 93 Nev. 73, 79, 560 P.2d 154, 157 (1977), represents the contrary rule:

We perceive no reason to distinguish between recovery for personal and property injury, on the one hand, and economic loss on the other. Cf. Santor v. A & M Karagheusian, Inc. [44 N.J. 52], 207 A.2d 305 (N.J. 1965); Randy Knitwear, Inc. v. American Cyanamid Company [11 N.Y.2d 5], 181 N.E.2d 399 [226 N.Y.S.2d 363] (N.Y. 1962). Instead, we believe that lack of privity

between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties. See: Cova v. Harley Davidson Motor Company [26 Mich. App. 602], 182 N.W.2d 800 (Mich.App. 1970); Kassab v. Central Soya [432 Pa. 217], 246 A.2d 848 (Pa. 1968); Lang v. General Motors Corporation, 136 N.W.2d 805 (N.D. 1965); Spence v. Three Rivers Builders & Masonry Supply [353 Mich. 120], 90 N.W.2d 873 (Mich. 1958); Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953); see also, Schwartz, The Demise of Vertical Privity: Economic Loss under the Uniform Commercial Code, 2 Hofstra L. Rev. 749 (1974); Zammit, Manufacturers' Responsibility for Economic Loss Damages in Products Liability Cases, 20 N.Y.L.F. 81 (1974).

See, also, *Cameo Curtains, Inc. v. Philip Carey Corp.*, 1981 Mass. Adv. Sh. 411, 416 N.E.2d 995; *Whitaker v. Farmhand, Inc.*, 173 Mont. 345, 567 P.2d 916 (1977); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977); *Cova v. Harley Davidson Mtr. Co.*, 26 Mich. App. 602, 182 N.W.2d 800 (1970).

We are persuaded that the latter *Hiles Co.* rule applies to the facts here.

Our Legislature has already addressed the scope of warranty recovery for horizontal nonprivity plaintiffs, Neb. U.C.C. § 2-318 (Reissue 1980), but it has remained silent as to vertical nonprivity plaintiffs seeking recovery such as presented here.

Historically, the privity of contract requirement in suits by an injured ultimate purchaser of a product was seen as necessary to prevent "absurd and outrageous consequences" involving unlimited exposure of manufacturers to liability. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099 (1960). Such has not been the result in the history of strict liability for defective products litigation for which privity is not required.

The defendant argues that the privity requirement is necessary to prevent it from being exposed to unknown and excessive damages. Recovery for breach of implied warranty is limited to those damages reasonably contemplated by the

parties and proximately caused by the breach. Neb. U.C.C. § 2-715 (Reissue 1980). The defendant also argues that if its implied warranty of merchantability is extended to those it expects to ultimately use its seed, and not just to its dealers, then it will in effect be an insurer of its customers' crops. Nothing in this opinion is intended either to suggest such a result or to include buyers dissatisfied with the seed performance that was less or other than expected without regard for all Uniform Commercial Code requirements, § 2-314, and the standard of proof required, § 2-715. The liability arises and that warranty extends to reasonable damages proximately caused by its placing an unmerchantable product in the marketplace. Also, there is no reason that the defendant cannot disclaim its warranty liability by policing its dealers and making sure that its disclaimer reaches the ultimate user of its product during the negotiations for the product's sale. We therefore hold that when a producer of seed places sealed bags of hybrid seed corn in its chain of distribution, it carries with it, unless effectively excluded or modified, an implied warranty of merchantability that protects the ultimate buyer-user in that chain.

*Error 3 - The Giving of Instruction No. 9*

Instruction No. 9 states:

> Defendant, in its affirmative defense, claims as follows:
>
> An express limited warranty and limitation of remedy has been created with respect to the Migro SPX-8 seed corn as set out on tag attached to Exhibit No. 9.
>
> This limitation of warranty and limitation of remedy, if made on or after delivery of the goods is ineffectual unless the buyer assents or is charged with knowledge as to the transaction.
>
> The burden of proof is upon the Defendant to establish each of the above elements by a preponderance of the evidence then your verdict shall be for Defendant.

Defendant claims error on two grounds. First, the instruction should have quoted the language of the limited warranty and remedy. This was not necessary; exhibit 9 is the seed bag, and it is a part of the evidence considered by the jury. Second, the instruction is ambiguous and forces defendant to

prove that the tag was known to the plaintiffs at the time of the sale. This was not advanced by defendant at the jury instruction conference, and in the absence of plain error, it will not now be considered. *Enyeart v. Swartz*, 213 Neb. 732, 331 N.W.2d 513 (1983). We find no prejudicial error in instruction No. 9.

*Error 4 - Discovery Sanctions Imposed*

After the trial plaintiffs asked that discovery sanctions be imposed against defendant on two grounds. First, one of defendant's employees testified about the testing of Migro SPX-8, and during cross-examination a document containing test results came to light. A copy of this document had not been supplied to plaintiffs even though an order to produce all test results had been made by the court. The trial court struck the evidence as to those tests. The second ground was in connection with a deposition taken on the first day of trial. It appears that plaintiffs' expert witness was not available for a deposition at the time convenient to defendant, even though it was at a time when plaintiffs represented that the witness could be deposed. On the opening day of trial the trial court refused defendant's motion to exclude the witness and ordered his deposition taken during trial. It also appears that the deposition of one of defendant's experts was taken by the plaintiffs at the same time. At the sanction hearing, a $200 attorney fee was assessed against defendant for the costs in taking the deposition.

Neb. Ct. R. 37 (Rev. 1983) of the Nebraska Discovery Rules allows the assessment of attorney fees caused by failure to abide by a discovery order. There is confusion in the record concerning the basis for the sanction; however, the trial court based the sanction on the taking of depositions. It was within the trial court's discretion, and we cannot say that it was an abuse of discretion.

*Error 5 - Amendment of Pretrial Order*

On January 10, 1983, 2 months prior to trial, defendant filed a motion to amend the pretrial witness list to allow the testimony of certain employees of defendant, expert witnesses, and 11 Nebraska farmers who had planted Migro SPX-8. The trial court granted the order in part, allowing the employees and the expert witnesses to testify, but only one of the farmers. Defendant made an offer of proof at trial that the other farmers

would testify that they had success with Migro SPX-8 seed produced from the same lot as that sold to plaintiffs.

Defendant contends that such testimony was relevant to its defense of implied warranty to show Migro SPX-8 was "fit for the ordinary purposes for which such goods are used." § 2-314(2)(c). One farmer and the dealer, who was also a farmer, did so testify for defendant.

The admission of evidence is in the sound discretion of the trial court, and evidence may be denied even though it may be relevant. Neb. Rev. Stat. § 27-403 (Reissue 1979).

The standard of review for denial of a motion to amend a pretrial order is whether there was an abuse of discretion. *Mousel v. ten Bensel*, 195 Neb. 456, 238 N.W.2d 632 (1976). See, also, Pretrial Procedure, Neb. Ct. R. at 10.1 (Rev. 1983). The action of the trial court was neither an abuse of discretion nor prejudicial to defendant.

*Error 7 - Proof of Damages—Crop Loss*

Defendant claims that plaintiffs failed in their proof of crop loss damages, in that the evidence does not meet the established standard of *Hopper v. Elkhorn Valley Drainage District*, 108 Neb. 550, 188 N.W. 239 (1922), restated in *Gable v. Pathfinder Irr. Dist.*, 159 Neb. 778, 787, 68 N.W.2d 500, 506 (1955):

> The measure where a crop is injured but not rendered entirely worthless as a result of the acts or omissions of another is the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at the time injured less the expense of fitting for market that portion of the probable crop which was prevented from maturing.

Neb. U.C.C. § 2-714 (Reissue 1980) provides in part:

> (1) Where the buyer has accepted goods . . . he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
>
> . . . .
>
> (3) In a proper case any incidental and consequential damages under the next section may also be recovered.

Section 2-715 provides in part:

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

In *Shotkoski v. Standard Chemical Manuf. Co.*, 195 Neb. 22, 28-29, 237 N.W.2d 92, 97 (1975), we stated:

Damages need not be proved with mathematical certainty, but the evidence must be sufficient to enable the trier of fact, in this case the jury, to estimate with a reasonable degree of certainty and exactness the actual damages. . . . It is the duty of the District Court to refrain from submitting to the jury the issue of damages where the evidence is such that it cannot determine that issue without indulging in speculation and conjecture.

See, also, *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.*, 199 Neb. 697, 261 N.W.2d 358 (1978).

The record is uncontradicted that plaintiffs made continuous good faith efforts to mitigate any crop loss involving the Migro seed. See § 2-715(2).

Included in the evidence supporting plaintiffs' consequential damages were: All seed varieties were planted, cultivated, fertilized, irrigated, and harvested in the same manner. Two hundred twenty acres in the four circles were planted with Migro SPX-8 seed, and the remaining acres were planted with four other seed varieties. Plaintiffs maintained detailed farming records concerning all crops. Uncontroverted tests established the average yield of the Migro corn at $19^1/_2$ bushels per acre and the other varieties at $113^3/_4$ bushels per acre. The probable crop was estimated at 22,000 bushels. A part of the harvested corn was sold for $3.42 per bushel, and the remainder was put into a U.S. reserve program at $2.83 per bushel, plus $0.265 per bushel storage. For convenience, all planted corn was harvested by plaintiffs together. Separate records of harvesting expenses for the probable crop were not maintained;

plaintiffs claim such proof was unreasonable.

Plaintiffs argue that the *Hopper* rule should not apply in warranty cases brought under the Uniform Commercial Code. We see no reason in this case to apply a different rule depending upon the method of injury, whether by external forces or improper seed; the economic loss is the same.

It was not necessary for plaintiffs to show the expense of harvesting the probable crop, since they harvested all the growing plants on the 220 Migro acres; that expense was about the same whether a good or poor crop. The question, then, is limited to the expense of handling and trucking the probable crop from the field to plaintiffs' storage facility or to market, or both, which is a normal farming procedure. Mathematical precision of that expense could require consideration of many factors, including hired labor costs, fuel costs, machinery use-depreciation costs, and repair expenses. Such would assist the jury; however, they are not absolutes. We conclude that the evidence proving damages was not speculative, and it was sufficient for the jury to estimate and assess plaintiffs' damages with a reasonable degree of certainty and exactness.

*Cross-Appeal*

In their cross-appeal plaintiffs claim error that prejudgment interest was not allowed. At trial plaintiffs were prevented from proving what rate of return they would have on their crop proceeds if they would have received such proceeds at the time the grain could have been sold, if produced. They contend that the loss of the use of the crop proceeds is a § 2-715(2)(a) proximate injury that was foreseeable and, thus, a recoverable element of their damage. They cite 4 R. Anderson, Anderson on the Uniform Commercial Code § 2-715:46 (3d ed. 1983). That section and the cases therein are aimed at establishing that the recovery of amounts by the buyer as interest paid in connection with the purchase of a product or amounts paid by the buyer as interest on amounts that needed to be borrowed as a result of a breach of warranty are recoverable. There is no persuasive reason to depart from our usual rule that where the amount of a loss, the subject of litigation, cannot be computed without opinion or discretion, the claim is unliquidated and prejudgment interest is not recoverable. *Erin Rancho Motels v.*

*United States F. & G. Co., ante* p. 9, 352 N.W.2d 561 (1984).
AFFIRMED.