ALBERT HERMAN AND MILDRED HERMAN, HUSBAND AND WIFE, APPELLANTS, V. BONANZA BUILDINGS, INC., APPELLEE.

390 N.W.2d 536

Filed July 25, 1986.   No. 85-207.

Thomas A. Wagoner, for appellants.

Patrick A. Brock of Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

Appellants, Albert and Mildred Herman, husband and wife, sued appellee, Bonanza Buildings, Inc., for damages resulting from the improper erection by Big Valley Builders, Inc., of a steel building, the components of which were manufactured and supplied by Bonanza. The operative petition alleges that Big Valley is the agent of Bonanza, rendering the latter liable for the defects in Big Valley's workmanship, and that Bonanza breached certain warranties it made directly to the Hermans. Trial was had without a jury. At the close of the Hermans' evidence, the trial court dismissed the suit pursuant to Bonanza's motion. The issues presented by the Hermans' assignments of error are (1) whether Big Valley was an agent of Bonanza, as claimed by the Hermans, thereby making Bonanza liable for Big Valley's defective workmanship, or whether, as claimed by Bonanza, Big Valley was an independent contractor for whose workmanship Bonanza has no responsibility, and (2) whether, if Big Valley was not the agent of Bonanza, Bonanza nonetheless breached any warranty it made to the Hermans. We affirm in part and in part reverse and remand for further proceedings.

In the posture of the case the controlling rule is that a court may decide an issue as a matter of law only when the facts are such that reasonable minds can draw but one conclusion. *Porter v. Jensen, ante* p. 438, 390 N.W.2d 511 (1986); *Poppe v. Petersen*, 221 Neb. 877, 381 N.W.2d 534 (1986); *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 376 N.W.2d 301 (1985).

It is important not to confuse the function of the trial court in ruling on a motion to dismiss with its function in adjudicating the controversy when acting as the finder of fact in an action at law tried without a jury. In sustaining a motion to dismiss, the

court resolves the controversy as a matter of law. *Hennings v. Schufeldt*, 222 Neb. 416, 384 N.W.2d 274 (1986); *Studley v. School Dist. No. 38*, 210 Neb. 669, 316 N.W.2d 603 (1982). In considering the evidence for that purpose, the party against whom the motion to dismiss is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence; if there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law. *In re Estate of Price, ante* p. 12, 388 N.W.2d 72 (1986); *Kahrhoff v. Kohl*, 219 Neb. 742, 366 N.W.2d 128 (1985). On the other hand, in rendering judgment as the finder of fact, the trial court resolves credibility issues and weighs the evidence in the same manner as does a jury. After so doing, the trial court reaches findings of fact which are equivalent to a jury's verdict. Such findings will not be overturned on appeal unless clearly wrong. *Hennings v. Schufeldt, supra*; *Studley v. School Dist. No. 38, supra*.

Our task, then, is to determine whether the evidence presents a question of fact. If so, the trial court erred in sustaining Bonanza's motion to dismiss at the close of the Hermans' evidence; if not, the trial court correctly sustained Bonanza's motion.

The record establishes that in mid-1980 Mr. Herman, finding himself in need of a building, responded to an advertisement for Bonanza buildings by calling the long-distance telephone number given. The person answering the call took his name and telephone number and advised that the dealer in Kearney would contact him.

Thereafter, Kurt Lauer, a salesman for Big Valley, which was located in Kearney, telephoned Mr. Herman and made an appointment to meet at the latter's house to discuss the type of building Mr. Herman wanted. At this meeting Lauer showed Mr. Herman a brochure which prominently displayed the Bonanza name and logotype and described various types of Bonanza buildings. The brochure stated that the unique engineering of the product provided the freedom to design a building best suited to the buyer's individual needs, and further stated:

A Building You Won't Have To Worry About.

Your new Bonanza Building is designed to be WORRY-FREE . . . We back it with a Written Warranty and a Local Independent Builder. . . . We think your new Bonanza building is built with a lot of quality and care, so we put it in writing. With every Bonanza building comes a Written Warranty to repair or replace defective material or workmanship . . . . We don't worry about your Bonanza building and we don't think you should either.

Mr. Herman selected a Bonanza building, specified certain modifications, and entered into a contract whereby Big Valley undertook to erect the building, incorporating the modifications Mr. Herman specified. In exchange, Mr. Herman agreed to pay Big Valley a total price of $9,707. He thereupon drew a check payable to Big Valley for a downpayment and delivered it to Lauer.

Big Valley thereafter obtained a building permit, poured a foundation of concrete paid for by Mr. Herman as an addition to the contract, and erected the building as modified from components delivered to the site by Bonanza. The erection process took about a month, during which time Mr. Herman made a further payment to Big Valley.

After the erection was completed Mr. Herman paid Big Valley the final amount due it under the contract. At that time the owner of Big Valley presented Mr. Herman with a document entitled "Bonanza Building Warranty," which provides that "the Bonanza Builder named below" will, among other things, repair leaks. The warranty was signed by Big Valley's owner only.

The first rain following completion leaked through windows, doors, and skylights of the building. Mr. Herman contacted Lauer, who attempted to make some repairs. However, the same leaks occurred during the next rain. At this point Mr. Herman noticed that 15 to 20 nails in the roof had missed the rafters, and he once again notified Big Valley. In approximately 2 to 3 weeks an unidentified man in a truck from Kearney inspected the building, but made no repairs. Lauer also came back several times in the fall of 1980, but the leaks were never remedied.

In 1981 Mr. Herman learned that Big Valley had gone out of business, so he contacted Bonanza. Bonanza sent Mr. Herman two tubes of caulking, and also sent a man from Norfolk to caulk the roof. Later, Bonanza sent a crew chief from Iowa, who did further caulking. The Bonanza representatives said they would see that the leaks were taken care of, and the crew chief told Mr. Herman to contact Bonanza if he had any more problems.

The leaks, which the uncontradicted evidence establishes were the result of improper erection, were never corrected. Neither Big Valley nor Bonanza billed for the corrective efforts each made. There was also evidence as to damages, a matter with which we are not concerned.

The relationship between Bonanza and Big Valley is defined by a written agreement, of which Mr. Herman was not aware. That agreement provides that Big Valley is an independent contractor and that neither party to the agreement shall act as the agent of the other. The agreement further provides that Bonanza does not warrant Big Valley's workmanship, performance, or finished product.

The building components manufactured and supplied by Bonanza were sold to Big Valley and delivered as Big Valley directed, in this case to the Hermans' land. Bonanza elicited testimony that it does not exercise any control over the contracts various builders enter into with their purchasers, nor does Bonanza exercise any control over the erection of the structures it sells. It does, however, offer to train builders in the erection of Bonanza buildings. The Bonanza building warranty Big Valley gave Mr. Herman was prepared by Bonanza and sold to Big Valley, as was the brochure which Lauer showed Mr. Herman. While Bonanza encourages builders to use the warranty form, not all do so.

The factors to be considered in determining whether one acting for another is an agent or independent contractor are, among other things, (1) the extent of control which, by the agreement, the employer may exercise over the details of the work, (2) whether the one employed is engaged in a distinct occupation or business, (3) the kind of occupation, with reference to whether, in the locality, the work is usually done

under the direction of the employer or by a specialist without supervision, (4) the skill required in the particular occupation, (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work, (6) the length of time for which the one employed is engaged, (7) the method of payment, whether by the time or by the job, (8) whether the work is a part of the regular business of the employer, (9) whether the parties believe they are creating an agency relationship, and (10) whether the employer is or is not in business. *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983). Although the control or right of control is the chief factor to be considered, *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983), no one factor is conclusive, *Eden v. Spaulding*, 218 Neb. 799, 359 N.W.2d 758 (1984).

*Eden* held that one who transported newspapers in a truck which he owned and maintained, who had other business interests, who was paid for his services without deduction for income or Social Security taxes, who was not subject to the control or direction of the employer, and who did not consider himself to be an agent of the employer was an independent contractor.

In *Maricle* a tank truck owner who hired his own employees, paid them from his own account after withholding taxes, set his own prices, handled all customer billings, and did not feel compelled to use company advertising was not the agent of the oil company employing him to transport its products, notwithstanding the fact that the oil company did give the truck owner advice from time to time.

In *Erspamer* a salesman who was provided no facilities or transportation, was not on salary, and over whose performance the employer exercised little control was held to be an independent contractor.

Big Valley was engaged in the distinct business of erecting buildings from components it purchased, an activity which required special skill; Big Valley was not subject to the direction or supervision of Bonanza, and Bonanza did not attempt to exert either direction or supervision; Big Valley negotiated and set the terms of the contract for the erection of the building; Big

Valley handled the billing of Mr. Herman; and Big Valley undertook the modification of the building sold to it by Bonanza. The only inference which can be drawn from an application of the factors previously enumerated to the facts of this case is that Big Valley was an independent contractor and not an agent of Bonanza.

It is true that Bonanza referred Big Valley to Mr. Herman, that Big Valley used a brochure prepared by Bonanza in negotiating its contract with Mr. Herman, that Bonanza offered training sessions and presumably trained Big Valley, and that Big Valley used a warranty form prepared by Bonanza. Those facts, however, do not make Big Valley an agent of Bonanza. We have stated that one who receives goods from another for resale to a third person is not thereby the other's agent unless his or her duty is to act primarily for the benefit of the one delivering the goods to him or her. *Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976).

There is nothing in the evidence which would support a finding that Big Valley acted primarily for the benefit of Bonanza. The evidence is that Big Valley was acting primarily for its own benefit; it undertook to buy components from which to erect a building and sell an erected building for the price it set. The fact that it used a Bonanza brochure to make the sale does not alter the fact that the agreement out of which this suit arose was between Mr. Herman and Big Valley only.

The Hermans further argue, however, that in any event Bonanza is estopped from denying liability, for it represented that it would correct the leaks and in fact undertook to do so.

In making that argument the Hermans rely on cases such as *Bank of Valley v. Shunk*, 215 Neb. 25, 337 N.W.2d 118 (1983), and *Kresha v. Kresha*, 211 Neb. 92, 317 N.W.2d 776 (1982), which recognize that affirmance of an unauthorized transaction can be inferred from a failure to repudiate it.

That argument, however, begs the question. The above-stated rule applies where an agent has acted beyond his or her authority. In other words, the rule presupposes the existence of a principal-agent relationship; it does not assist us in determining whether such an agency relationship exists. It

cannot apply where there is no agency, for there cannot have been an unauthorized act by a nonexistent agent. Bonanza's repair efforts were simply a public relations effort and cannot be deemed to have created an agency relationship with Big Valley where none existed before the repair efforts were undertaken.

The evidence thus fails as a matter of law to establish an agency relationship between Bonanza and Big Valley.

This, then, brings us to the warranty issue. As tried, the case presents questions as to whether Bonanza breached the Uniform Commercial Code implied warranties of fitness and merchantability, as well as any express warranty contained in the brochure displayed to Mr. Herman by Big Valley.

The first question to be resolved in connection with this issue is whether the Nebraska Uniform Commercial Code applies to this transaction.

As recently stated in *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. 303, 363 N.W.2d 155 (1985), whether a transaction involving both a transfer of goods and the performance of labor is the sale of "goods" as contemplated by Neb. U.C.C. § 2-102 (Reissue 1980) (and thus within the purview of the code) or the sale of "services" (and thus not within the purview of the code) depends upon the predominant purpose of the transaction. If that predominant purpose is the rendition of a service with the goods incidentally involved, the transaction is not the sale of goods; if, on the other hand, the predominant purpose is the transfer of goods with labor incidentally involved, the transaction does constitute the sale of goods.

The predominant purpose of the transaction was not to sell Mr. Herman the components for a building but, rather, to create a building for him. Thus, the predominant purpose of the transaction was the erection of the building; that is, the rendition of a service, not the transfer of goods. Therefore, the Nebraska Uniform Commercial Code does not apply, and we are left with the question of whether the language of the brochure, prepared by Bonanza and shown to Mr. Herman by Big Valley, constituted the making of an express common-law warranty to the Hermans by Bonanza.

We have indicated that an express common-law warranty arises when, to induce a sale, the seller makes a statement of fact representing the quality or character of the thing sold, which statement is reasonably relied upon by the buyer. See, *Erskine v. Swanson*, 45 Neb. 767, 64 N.W. 216 (1895); *Patrick v. Leach*, 8 Neb. 530, 1 N.W. 853 (1879).

The brochure prepared by Bonanza and presented to Mr. Herman by Big Valley extolled the virtues of Bonanza buildings and expressly promised that Bonanza, as well as the "Local Independent Builder," would replace or repair defects resulting from poor workmanship. It clearly would have been reasonable for Mr. Herman to rely on those statements in entering into the transaction. If he did in fact rely on the statements, there arose an express common-law warranty that Bonanza, as the manufacturer of the building components, as well as the "Local Independent Builder," would repair or replace those portions of the building rendered defective because of poor workmanship.

It is true that there was no privity between Bonanza and Mr. Herman, in the sense that they did not deal directly with each other. However, there is no denying the fact that the statements in the brochure were, by their very terms, directed to the ultimate consumer, in this case Mr. Herman. We recognize that *Peterson v. North American Plant Breeders*, 218 Neb. 258, 354 N.W.2d 625 (1984), arose under the Uniform Commercial Code and is therefore not direct precedent for this case. Nonetheless, the rules therein that an advertisement may create an express warranty and that the lack of privity between a buyer and manufacturer does not preclude an action against the manufacturer for recovery of economic losses caused by a breach of the warranty apply by analogy. The underlying rationale of *Peterson* simply is that a manufacturer may not on the one hand reap the benefits of the glowing descriptions and promises it puts into the stream of commerce, and on the other hand avoid legal responsibility for them when they prove unfounded.

As to Mr. Herman, then, the sustainment of Bonanza's motion to dismiss at the close of the Hermans' evidence was improvident. As to him, it must be determined as a question of

fact from a weighing of the evidence whether he relied on the statements in Bonanza's brochure such that those statements become a part of the basis of the bargain. If so, there was a reasonable reliance upon Bonanza's warranty; if not, there was no such reliance, and, thus, one of the essential elements of a cause of action for the breach of an express common-law warranty would be lacking.

As to Mrs. Herman, the situation is that there is simply no evidence she was a party to the transaction at all. Consequently, the dismissal as a matter of law as to her was correct.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

GRANT, J., not participating.

BOSLAUGH, J., dissenting in part.

I dissent only from that part of the opinion of the court which holds there may be a question of fact as to whether the defendant is bound by a common-law express warranty.

The seller in this case was Big Valley Builders, Inc. The defendant only furnished component parts to Big Valley, which were then assembled by Big Valley on the plaintiff's property.

The Bonanza brochure stated clearly that the person giving service to the plaintiff before and after construction would be the "Local Independent Builder." The written express "Bonanza Building Warranty" which the plaintiff received was between the Bonanza builder (Big Valley Builders, Inc.) and the plaintiff.

This is not a case where a manufacturer placed a completed product in the stream of commerce. It seems to me that the evidence in this case will not support a finding that the defendant warranted the performance of the "independent builder."