783 N.W.2d 774 (2010)
280 Neb. 75
Mary FOX, appellee,
v.
Raymond WHITBECK, appellee, and
Sherry L. McEwin, formerly known as Sherry L. Whitbeck, intervenor-appellant.
No. S-09-923.
Supreme Court of Nebraska.
June 18, 2010.
*775 John P. Weis, of Sodoro, Daly & Sodoro, P.C., Omaha, for intervenor-appellant.
Ralph E. Peppard, for appellee Mary Fox.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Sherry L. McEwin, formerly known as Sherry Lee Whitbeck, appeals from an order of the Douglas County District Court confirming a sheriff's sale of real property owned by her former spouse. The district court determined that McEwin's child support lien on the property had lapsed pursuant to Neb.Rev.Stat. § 42-371(5) (Reissue 2008). We affirm the determination of the district court regarding the lien, but reverse the order confirming the sale and remand for further proceedings on McEwin's objections to confirmation which were not dependent upon the lapsed lien.

BACKGROUND
On April 20, 1995, the Douglas County District Court dissolved the marriage of McEwin and Raymond Whitbeck. Whitbeck was ordered to pay $484 per month in child support for the parties' two children.
On February 29, 1996, Mary Fox obtained a decree of paternity entered in the Douglas County district court which determined that Whitbeck was the father of a child born to Fox in October 1993 and required Whitbeck to pay $368.50 per month in child support. On November 7, 2008, Fox filed a motion in the district court seeking leave to execute on real property formerly owned by Whitbeck in order to enforce the child support lien created by the 1996 child support judgment. The district court sustained the motion on the same day and ordered the sheriff to execute on the property.
*776 On December 23, 2008, McEwin filed a motion to intervene and sought a hearing on the disposition of the proceedings of the execution and sale. McEwin claimed that she had a continuing child support lien on the property based upon the 1995 decree. The district court granted the motion and ordered that a hearing to determine the priority of McEwin's child support lien would be held at a later date.
The sheriff's sale occurred on December 31, 2008. Fox submitted the high bid of $21,500. The court commenced a hearing on February 20, 2009, with respect to McEwin's claimed lien. The evidence received at the hearing included a copy of McEwin's 1995 decree and a payment history report showing unpaid child support due McEwin in the amount of $14,370.82. The report reflected nine instances between 2002 and 2005 when unspecified collection efforts had been undertaken. McEwin's counsel stated that McEwin believed these collection efforts were by means of wage garnishment, but the court noted that there was no evidence to support this claim. The hearing was continued to permit McEwin's counsel additional time to gather evidence on this point.
On March 20, 2009, before the hearing resumed, McEwin filed a motion for continuance and an objection to confirmation of sale. In these filings, she alleged that there were irregularities in the sheriff's sale that resulted in a high bid which was significantly below the fair market value of the property. McEwin argued that the sale should not be confirmed in order to protect both her child support lien and that of Fox.
The continued hearing resumed on April 1, 2009. McEwin's counsel offered, and the court received, six documents, each entitled "Order/Notice to Withhold Income for Child Support," which were filed in the district court for Douglas County on various dates between August 6, 2001, and October 21, 2003. For brevity, we shall refer to these documents as income withholding notices. Fox offered, and the court received, evidence of unpaid child support due to her in the amount of $62,702.44.
In its August 12, 2009, order, the district court overruled McEwin's objections and confirmed the sale. The court noted that neither the evidence nor its records reflected any wage garnishment or execution initiated by McEwin to enforce her child support judgment, and the court further concluded that the income withholding notices did not constitute executions within the meaning of § 42-371(5). Therefore, the court determined that the lien arising from McEwin's 1995 judgment had lapsed and confirmed the judicial sale of Whitbeck's real property to Fox.
McEwin perfected this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

ASSIGNMENTS OF ERROR
McEwin assigns, consolidated and restated, that the district court erred in (1) determining that the income withholding notices did not constitute executions within the meaning of § 42-371(5) and (2) confirming the sale without conducting a hearing on her objections unrelated to the lien.

STANDARD OF REVIEW
An appellate court resolves questions of law and issues of statutory interpretation independently of the lower court's conclusion.[2]
*777 It is the general rule that confirmation of judicial sales rests largely within the discretion of the trial court, and will not be reviewed except for manifest abuse of such discretion.[3]

ANALYSIS

VALIDITY OF LIEN
Nebraska statutory law provides various means for enforcing a child support judgment. One is through imposition of a lien on real property pursuant to § 42-371, which provides:
(1) All judgments and orders for payment of money shall be liens, as in other actions, upon real property and any personal property registered with any county office and may be enforced or collected by execution and the means authorized for collection of money judgments;
. . . .
(5) Support order judgments shall cease to be liens on real or registered personal property ten years from the date (a) the youngest child becomes of age or dies or (b) the most recent execution was issued to collect the judgment, whichever is later, and such lien shall not be reinstated.
In this case, McEwin's youngest child reached the age of majority in May 1988. Thus, her child support judgment would have ceased to be a lien on the real property prior to the sheriff's sale unless the income withholding notices constituted executions within the meaning of § 42-371(5).
The term "execution" is not specifically defined in § 42-371, but it is generally defined by Neb.Rev.Stat. § 25-1501 (Reissue 2008) as a "process of the court." This statutory definition is consistent with the commonly accepted understanding of the term as a "formal document issued by the court that authorizes a sheriff to levy upon the property of a judgment debtor"[4] or a "court order directing a sheriff or other officer to enforce a judgment, usu[ally] by seizing and selling the judgment debtor's property."[5] In St. Joseph Dev. Corp. v. Sequenzia,[6] the Court of Appeals held that garnishment was an execution within the meaning of Neb.Rev.Stat. § 25-1515 (Reissue 1995), which provided that a judgment would become dormant if "execution shall not be sued out" within specified time periods. McEwin argues that wage withholding to collect child support is analogous to garnishment and should therefore be considered an execution within the meaning of § 42-371(5).
Garnishment is a legal remedy which involves issuance of a summons and a court order as a means of enforcing the authority of a court with respect to a judgment.[7] Nebraska has a statutory procedure whereby a party may apply for and obtain a court order directing an employer to withhold previously ordered child support from the wages of a parent,[8] but there is no indication in the record that this *778 procedure was utilized in this case, and we express no opinion as to whether it would constitute an "execution" within the meaning of § 42-371(5). Here, the district court treated the income withholding notices as being issued pursuant to the Income Withholding for Child Support Act (IWCSA).[9] That determination is not challenged in this appeal, and we agree that it is correct.
A stated purpose of the IWCSA is "to provide a simplified and relatively automatic procedure for implementing income withholding in order to guarantee that child, spousal, and medical support obligations are met when income is available for that purpose."[10] The Legislature has stated that while income withholding under the IWCSA is the "preferred technique" for enforcement of such obligations, "other techniques such as liens on property and contempt proceedings should be used when appropriate."[11] Under the IWCSA, "A support order shall constitute and shall operate as an assignment, to the State Disbursement Unit, of that portion of an obligor's income as will be sufficient to pay the amount ordered for child, spousal, or medical support...."[12] The IWCSA provides that "[t]he Title IV-D Division of the Department of Health and Human Services or its designee shall be responsible for administering income withholding."[13] The Department of Health and Human Services is authorized by the IWCSA to send notices to an employer directing that an amount be withheld from the income of a parent in order to reduce or satisfy that parent's child support obligation.[14]
Although the income withholding notices in this case were filed in the district court and identify the proceedings in which the child support judgment was entered, there is no indication that they were issued by or transmitted by the court. To the contrary, they appear to have been authorized and issued by the Department of Health and Human Services and, in one instance, the Nebraska Child Support Payment Center. We read the language of §§ 42-371 and 43-1702 as a recognition by the Legislature that execution is one of several means of collecting child support, not as a statement that all methods of collecting child support are executions. Thus, while the income withholding notices in this case are part of a legally authorized administrative remedy for the collection of child support, they are not "executions" within the meaning of § 42-371(5) because they are not processes of the court. The district court correctly concluded that McEwin's child support judgment had ceased to be a lien on the real property which was the subject of the execution and sheriff's sale initiated by Fox.

OTHER OBJECTIONS TO CONFIRMATION OF SALE
McEwin argues that even if she no longer had an enforceable lien, she still had an enforceable child support judgment, and that therefore, the district court erred in confirming the sheriff's sale without conducting a hearing on her objections to confirmation based upon irregularities in the sale and the amount of the sale price. We find merit in this argument.
Child support judgments do not become dormant by lapse of time, and the *779 fact that a child support judgment ceases to be a lien by operation of § 42-371(5) does not extinguish the judgment itself or cause it to become dormant.[15] Although McEwin did not have an enforceable lien at the time of the sheriff's sale, she was a judgment creditor with an interest in any potential proceeds of the sale exceeding the amount necessary to satisfy Fox's lien. Accordingly, she had standing to object to the confirmation of the sale on the ground of irregularities which resulted in a sale price lower than fair market value. McEwin filed an objection alleging such irregularities, but there is no indication that she was permitted to present evidence in support of her objection. The hearing regarding the validity of McEwin's lien commenced on February 20, 2009, prior to the filing of the objection on March 20, and was limited to the validity of the lien. The hearing was continued and concluded on April 1, but the record does not show that the scope of the hearing was expanded to include McEwin's objection to confirmation. The district court overruled McEwin's objection and confirmed the sale based solely upon its determination that McEwin's lien had lapsed, with no mention of the other issues she raised. Because McEwin was not given an opportunity to be heard regarding her objections unrelated to her claimed lien, we conclude that the district court abused its discretion in confirming the sale.

CONCLUSION
We affirm the determination of the district court that McEwin's child support lien had lapsed by operation of § 42-371(5) because there had been no execution on her child support judgment within the prescribed time period. But because she was not given an opportunity to be heard as to her other objections to confirmation of the sale, and the district court apparently did not consider her objections, we reverse the order confirming the sale and remand for further proceedings consistent with this opinion.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] See Neb.Rev.Stat. § 24-1106(3) (Reissue 2008).
[2] See, Citizens for Eq. Ed. v. Lyons-Decatur Sch. Dist., 274 Neb. 278, 739 N.W.2d 742 (2007); Japp v. Papio-Missouri River NRD, 273 Neb. 779, 733 N.W.2d 551 (2007).
[3] Deutsche Bank Nat. Trust Co. v. Siegel, 279 Neb. 174, 777 N.W.2d 259 (2010). See First Nat. Bank of York v. Critel, 251 Neb. 128, 555 N.W.2d 773 (1996).
[4] 30 Am.Jur.2d Executions § 47 at 84 (2005).
[5] Black's Law Dictionary 650 (9th ed. 2009).
[6] St. Joseph Dev. Corp. v. Sequenzia, 7 Neb. App. 759, 585 N.W.2d 511 (1998), overruled on other grounds, Breeden v. Nebraska Methodist Hosp., 257 Neb. 371, 598 N.W.2d, 441 (1999).
[7] See, Neb.Rev.Stat. § 25-1056 (Reissue 2008); J.K. v. Kolbeck, 257 Neb. 107, 595 N.W.2d 875 (1999).
[8] See Neb.Rev.Stat. §§ 42-364.01 to 42-364.14 (Reissue 2008).
[9] Neb.Rev.Stat. §§ 43-1701 to 43-1743 (Reissue 2008).
[10] § 43-1702.
[11] Id.
[12] § 43-1718.
[13] Id.
[14] See § 43-1723.
[15] See, Nowka v. Nowka, 157 Neb. 57, 58 N.W.2d 600 (1953); Freis v. Harvey, 5 Neb. App. 679, 563 N.W.2d 363 (1997).