Mary Fox, appellee, v. Raymond Whitbeck, appellee, and Sherry L. McEwin, formerly known as Sherry L. Whitbeck, intervenor-appellee, and John McWilliams, intervenor-appellant.

___ N.W.2d ___

Filed June 21, 2013.    No. S-12-821.

1. **Judicial Sales: Appeal and Error.** An appellate court reviews a court's order confirming an execution sale or a judicial sale for abuse of discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
4. **Statutes.** Statutory interpretation presents a question of law.
5. **Judgments: Liens: Child Support.** Under Neb. Rev. Stat. § 42-371 (Cum. Supp. 2012), all orders and judgments for child support in the specified proceedings operate as statutory liens. Such liens attach from the date of the judgment to the obligor's real property and any personal property registered with any county officer, for arrears and as security for future obligations.
6. **Deeds: Conveyances.** A quitclaim deed transfers only the grantor's interest in the property, not the property itself.
7. **Judgments: Debtors and Creditors: Property: Fraud.** Unless a judgment creditor shows that a judgment debtor has fraudulently transferred real property to avoid creditors, the relevant question for the remedy of execution is whether the debtor has any interest in the property.
8. ____: ____: ____: ____. Under Neb. Rev. Stat. § 25-1516 (Reissue 2008), a judgment creditor can obtain a writ of execution only to levy on the judgment debtor's personal or real property interests.
9. **Judgments: Liens: Property.** A judgment creditor cannot execute a lien on real property unless the judgment debtor has a legal or equitable interest in the property.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Reversed and remanded with directions.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for intervenor-appellant.

Ralph E. Peppard for appellee Mary Fox.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Miller-Lerman, JJ.

Connolly, J.

## SUMMARY

John McWilliams appeals from the district court's order confirming an execution sale of real property located in Omaha, Nebraska, which was formerly owned by Raymond Whitbeck. The court ordered the sale to satisfy a judgment lien against the property held by Mary Fox for Whitbeck's child support arrears. But when the court issued the writ of execution, McWilliams was the record owner—not Whitbeck. He obtained the property through a quitclaim deed and intervened to object to the court's confirmation of the sale. Whitbeck has not filed a brief in this appeal.

McWilliams argues that the court could not order the sheriff to conduct an execution sale because the property was no longer titled in the judgment debtor's name, i.e., Whitbeck's name. We agree. To satisfy a judgment, Nebraska's writ of execution statutes[1] permit a court to order a sheriff to levy a writ of execution upon "the lands and tenements of the debtor." The court lacked authority to order the sheriff to levy the writ on property in which the judgment debtor no longer had an interest, absent any finding that the debtor's transfer of the property was fraudulent. We therefore reverse the court's order confirming the sale and remand the cause with directions for the court to vacate its order.

## BACKGROUND

In 1995, Fox filed an action to establish Whitbeck's paternity of her daughter, who was born in 1993. In 1996, the court entered a paternity decree ordering Whitbeck to pay Fox $368 per month in child support.

In May 2006, the court issued a writ of execution against Whitbeck's unspecified property to satisfy Fox's child support lien, but it was returned unsatisfied. Sometime in 2006, Fox learned that Whitbeck had conveyed the real property by quitclaim deed to Kimberly Thiem, his girlfriend. Fox said Whitbeck told her that after he learned Fox had a child support lien against the property, he conveyed it to Thiem so that Fox

---

[1] See Neb. Rev. Stat. §§ 25-1516 and 25-1518 (Reissue 2008).

would "never get the money." The quitclaim deed was recorded in 2004 and showed that Whitbeck conveyed the property to Thiem for $1. In October 2006, Thiem conveyed the property to McWilliams by quitclaim deed. McWilliams testified that Thiem transferred the property to him for $10,000 that he had previously given to her. But the quitclaim deed stated that Thiem conveyed the property to him for $1.

In October 2008, Fox filed a second praecipe for an execution on Whitbeck's property. His child support arrears then totaled $60,444. Fox alleged that Whitbeck had been in prison since 2006 and that she was unaware of any personal property that he owned. She sought an execution sale of the property that Whitbeck had previously owned. But the sheriff refused to execute the lien on the property without a court order. Fox then filed a motion requesting that the court reopen the case and direct the sheriff to execute on the property titled in McWilliams' name. She alleged that when the quitclaim conveyances were made, the property was subject to her lien. In November, the court ordered the sheriff to execute on the property.

On December 15, 2008, the sheriff served notice of the writ on Whitbeck. In January 2009, the sheriff filed an affidavit with the court stating that on December 31, the sheriff sold the "interest of Raymond Whitbeck" in the property to Fox, as the highest bidder at the public auction, for $20,500.

Also in December 2008, Sherry McEwin, Whitbeck's former spouse, intervened to have the court determine the priority of her child support lien on the property, and she filed objections to the sale. The court determined that her lien had lapsed. We affirmed that ruling on appeal.[2] But because McEwin's child support judgment gave her an interest in any proceeds that exceeded the amount of Fox's lien, we remanded the cause for the court to consider McEwin's objections that the property was sold for less than its fair market value. We issued that mandate in July 2010. In January 2011, McWilliams also intervened. He filed objections to the sale and cross-claims against Fox.

[2] See *Fox v. Whitbeck*, 280 Neb. 75, 783 N.W.2d 774 (2010).

McWilliams alleged that he was a good faith purchaser who had been deprived of his property without a hearing, in violation of due process requirements and Neb. Rev. Stat. § 25-1521 (Reissue 2008). He specifically alleged that §§ 25-1516 and 25-1518 barred the execution sale because Whitbeck, the debtor, had no interest in the property and Fox had not sought to void Whitbeck's transfer as fraudulent. He also alleged that the statute of limitations barred the execution sale, as did the doctrine of laches. Finally, he alleged that Fox's failure to personally bid on the property was a procedural irregularity. For relief, he asked the court to quiet title in him or to grant him a priority lien for his expenditures: i.e., the alleged purchase price, real estate taxes, and unspecified expenditures.

In March 2012, the court held an evidentiary hearing on McEwin's previous objection to the sale and McWilliams' objections and cross-claims. McEwin did not appear. McWilliams presented evidence about the value of the property, a vacant lot; the maintenance and improvements to the property that he had made; and the property taxes that he had paid. As stated, McWilliams' improved lot was next to the vacant lot. McWilliams presented extensive evidence to support his position that the vacant lot was worth much more than its 2012 assessed value or the price that Fox had paid for it at the execution sale. Given our disposition of the case, however, we do not recount this evidence.

The court rejected all of McWilliams' claims. The court found that the quitclaim deeds had conveyed only the grantors' interests, not the land itself; so the conveyances were subject to Fox's lien. It made the following determinations: (1) the property was sold for a fair price; (2) no irregularities in the execution sale precluded confirmation; and (3) the requirements for confirming an execution sale under Neb. Rev. Stat. § 25-1531 (Reissue 2008) were satisfied.

## ASSIGNMENTS OF ERROR

McWilliams assigns that the court erred as follows: (1) failing to sustain his objections; (2) finding that § 25-1531 was satisfied; (3) determining that the property sold for a fair value;

(4) failing to find that the property would have been sold for more in a subsequent sale; (5) failing to find irregularities in the sale; (6) failing to find that Fox's claim was barred by the statute of limitations; (7) failing to conclude that the doctrine of laches applied; and (8) failing to award McWilliams damages or reimbursement for his expenditures.

## STANDARD OF REVIEW

[1-4] We review a court's order confirming an execution sale or a judicial sale for abuse of discretion.[3] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[4] But we independently review questions of law decided by a lower court.[5] Statutory interpretation presents a question of law.[6]

## ANALYSIS

McWilliams contends that under Nebraska law, a court cannot order a sheriff to levy a writ of execution on property that the judgment debtor does not own or possess. He argues that under §§ 25-1516 and 25-1518, a writ of execution can be levied only on the judgment debtor's lands and tenements. And he argues that our case law supports his position.

[5,6] Fox, of course, views the matter differently. Fox premises her argument on two established rules of law. First, under Neb. Rev. Stat. § 42-371 (Cum. Supp. 2012), all orders and judgments for child support in the specified proceedings (including paternity actions) operate as statutory liens. Such liens attach from the date of the judgment to the obligor's real property and any personal property registered with any

---

[3] See, *Fox, supra* note 2; *Deutsche Bank Nat. Trust Co. v. Siegel*, 279 Neb. 174, 777 N.W.2d 259 (2010); 30 Am. Jur. 2d *Executions and Enforcements of Judgments* § 384 (2005). See, also, § 25-1531.

[4] *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[5] *Id.*

[6] *Id.*

county officer, for arrears and as security for future obligations.[7] She argues that unless a support lien has lapsed, it may be enforced by execution, the same as any other judgment lien. Second, a quitclaim deed transfers only the grantor's interest in the property, not the property itself.[8] She argues that because the judgment ordering child support was issued against Whitbeck before 2004—when he conveyed the property by quitclaim deed to Thiem—Thiem took the property subject to Fox's lien and transferred it to McWilliams subject to her lien.

[7] Fox's arguments are partly correct. We agree that Fox's lien, for Whitbeck's arrears and future obligations, attached to his property from the date of the judgment and had priority over any subsequent encumbrance of the property. And we agree that Thiem and McWilliams took the property subject to Fox's lien. But unless a judgment creditor shows that a judgment debtor has fraudulently transferred real property to avoid creditors, the relevant question for the remedy of execution is whether the debtor has any interest in the property.

[8] Under Neb. Rev. Stat. § 25-1501 (Reissue 2008), execution is an administrative process; a clerk of the court issues the writ. But under § 25-1516, a judgment creditor can obtain a writ of execution only to levy on the judgment debtor's personal or real property interests:

> (1) The writ of execution against the property of the debtor issuing from any court of record in this state shall command the officer to whom it is directed that of the goods and chattels of the debtor he or she cause to be made the money specified in the writ, and for want of goods and chattels he or she cause the same to be made *of the lands and tenements of the debtor.*

(Emphasis supplied.)

---

[7] See, e.g., *McCook Nat. Bank v. Myers*, 243 Neb. 853, 503 N.W.2d 200 (1993); *McCord v. McCord*, 128 Neb. 230, 258 N.W. 474 (1935) (citing *Lynch v. Rohan*, 116 Neb. 820, 219 N.W. 239 (1928)).

[8] See, e.g., *Morello v. Land Reutil. Comm. of Cty. of Douglas*, 265 Neb. 735, 659 N.W.2d 310 (2003). See, also, 5 Richard R. Powell & Michael Allan Wolf, Powell on Real Property § 38.05[5] (2000).

Similarly, § 25-1518 requires an officer receiving a writ of execution to attempt to seek a judgment debtor's available personal property first and, if that fails, to execute the lien against the debtor's available real property:

> The officer to whom a writ of execution is delivered shall proceed immediately to levy the same upon the goods and chattels of the debtor; but if no goods and chattels can be found, the officer shall endorse on the writ of execution no goods, and forthwith levy the writ of execution *upon the lands and tenements of the debtor*, which may be liable to satisfy the judgment.

(Emphasis supplied.)

[9] McWilliams argues that a judgment creditor cannot execute a lien on real property unless the judgment debtor has a legal or equitable interest in the property.[9] Fox's argument that this court decided these cases before the Legislature enacted § 42-371 misses the point. The relevant writ of execution statutes have not substantively changed. To obtain an execution sale of the property for a judgment owed by Whitbeck, Fox had to show that Whitbeck still had an interest in the property or that he had fraudulently transferred it.[10] Fox never alleged a fraudulent transfer, and the court's order did not rest upon such findings. We therefore reverse the order and remand the cause with directions for the court to vacate its order confirming the execution sale.

REVERSED AND REMANDED WITH DIRECTIONS.

CASSEL, J., not participating.

---

[9] See, *Thies v. Weible*, 126 Neb. 720, 254 N.W. 420 (1934); *Flint v. Chaloupka*, 72 Neb. 34, 99 N.W. 825 (1904); *First Nat. Bank of Plattsmouth v. Tighe*, 49 Neb. 299, 68 N.W. 490 (1896).

[10] See, e.g., *United States Nat. Bank v. Rupe*, 207 Neb. 131, 296 N.W.2d 474 (1980); *Weckerly v. Taylor*, 74 Neb. 84, 103 N.W. 1065 (1905).