in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

## CONCLUSION

Having determined that the district court properly construed § 31-224 and did not err when finding the Liermanns had complied with this section, we affirm the district court's judgment.

Affirmed.

---

T. Sidney Thurston and Jean Thurston, appellants,
v. Robert Nelson, doing business as Nelson
Construction, and Nelson Construction
& Custom Homes, Inc., appellees.

___ N.W.2d ___

Filed February 4, 2014.    No. A-13-056.

1. **Trial: Expert Witnesses: Appeal and Error.** A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.

4. **Trial: Witnesses.** In order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited.

5. **Trial: Evidence: Appeal and Error.** To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded.

6. ____: ____: ____. An improper exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.

7. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

8. **Jury Instructions: Appeal and Error.** If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal.

9. **Jury Instructions: Pleadings: Evidence.** A trial court, whether requested to do so or not, has a duty to instruct the jury on issues presented by the pleadings and the evidence.

10. **Actions: Pleadings: Words and Phrases.** A cause of action consists of the fact or facts which give one a right to judicial relief against another; a theory of recovery is not itself a cause of action.

11. **Actions: Pleadings.** Two or more claims in a complaint arising out of the same operative facts and involving the same parties constitute separate legal theories, of either liability or damages, and not separate causes of action.

12. **Election of Remedies.** Pleading alternative theories of recovery is permitted, and ordinarily, an election between theories of recovery will not be required unless the theories are so inconsistent that a party cannot logically choose one without renouncing the other.

13. **Negligence: Complaints: Contracts: Torts.** In order to decide the form of redress, whether contract or tort, it is necessary to know the source or origin of the duty or the nature of the grievance, and the character of the action must be determined from what is asserted concerning it in the complaint.

14. **Actions: Breach of Contract: Torts: Words and Phrases.** Contract actions, which arise from a breach of a duty imposed on one by an agreement, protect a plaintiff's interest in or right to performance of another's promises, whereas tort actions, which arise from a breach of a duty imposed by law, protect a plaintiff's interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property.

15. **Contractors and Subcontractors: Warranty.** As a general rule, a contractor constructing a building impliedly warrants that the building will be erected in a workmanlike manner.

16. ____: ____. The implied warranty of workmanlike performance provides the owner with an action against the contractor if the contractor's work is not of good quality and free from defects.

17. **Contracts: Contractors and Subcontractors.** In building and construction contracts, in the absence of an express agreement to the contrary, the law implies that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose.

Appeal from the District Court for Grant County: Travis P. O'Gorman, Judge. Affirmed.

Gregory J. Beal for appellants.

James L. Zimmerman, of Zimmerman Law Firm, P.C., L.L.O., for appellees.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

# I. INTRODUCTION

T. Sidney Thurston and Jean Thurston filed suit in the district court for Grant County against Robert Nelson, doing business as Nelson Construction, and Nelson Construction & Custom Homes, Inc. (referred to herein individually and collectively as "Nelson"), seeking damages for alleged construction defects resulting from Nelson's work in building an addition to and remodeling their house. Following a jury trial, the jury found in favor of Nelson. The Thurstons have appealed, assigning error to the court's exclusion of certain expert witness testimony and its refusal to give requested jury instructions. Finding no abuse of discretion in the district court's exclusion of expert witness testimony and no error in the instructions given to the jury, we affirm.

# II. BACKGROUND

In their operative complaint, the Thurstons set forth claims for breach of contract, negligence, and breach of the implied warranty of workmanlike performance. Specifically, the Thurstons alleged that as a result of the parties' contact in February 2009, they entered into an oral agreement for Nelson to construct a substantial addition to the Thurstons' house in rural Grant County and to make certain improvements to the existing structure. They alleged that Nelson held himself out as an experienced homebuilder, that he represented he could and would build the addition in accordance with industry standards and building codes within a reasonable time, and that they relied upon Nelson's representations and promises. They further alleged that Nelson worked on their house between May and October, that Nelson removed his tools and equipment from the construction site in November and never returned to complete the project, and that they had paid Nelson $42,024.43 and had incurred $90,479.39 in material and inspection costs.

With respect to breach of contract, the Thurstons alleged that Nelson breached the contract by not completing the agreed

construction within a reasonable time, by not performing the work in a workmanlike manner, and by leaving both the old structure and the new structure unprotected from the elements, resulting in damage to the property. They alleged that they had suffered damages to the new construction totaling approximately $132,503.82. They further alleged that they had suffered personal injury due to dampness and mold existing in both the old structure and the new structure, which dampness and mold would require removal and replacement of the new structure at an estimated cost of $116,000 and an estimated additional $250,000 in damages if the old structure required replacement. The Thurstons alleged consequential damages in the nature of loss of use and occupancy of their house, severe emotional distress and mental anguish, and other allowed consequential damages. They alleged that their damages from Nelson's breach of contract were continuing and increasing due to structural inadequacies or defects and continued exposure to the elements.

With respect to negligence, the Thurstons alleged that Nelson had a duty to use reasonable and workmanlike practices and procedures in the construction work and that he breached his duty to do so. Specifically, they alleged that Nelson failed to construct the foundation according to building code and workmanlike practices; supervise the work of subcontractors; protect the property from the elements; use proper-dimension lumber, beams, or support systems for the structure; assess load-bearing capacity of the existing structure or provide adequate structural support for new construction joining the existing structure; and use venting where reasonably required. The Thurstons alleged Nelson's negligence was the sole and proximate cause of damages sustained to both the new and existing structure in excess of $10,000. They alleged that they suffered personal injury to their health due to mold on the premises and also repeated their claim for consequential damages.

Finally, with respect to breach of warranty, the Thurstons alleged that Nelson represented himself to be an experienced, qualified homebuilder who was competent and experienced enough to do the contemplated construction work and that

based on his representations and the Thurstons' reliance on those representations, Nelson began to construct an addition and to make certain alterations to the existing house. The Thurstons alleged that Nelson failed to perform the construction in a workmanlike manner and that there were numerous structural and cosmetic defects in Nelson's work. They alleged that as a result of Nelson's breach of the implied warranty, they had been damaged in the minimum amount of $250,000. The Thurstons again repeated their claim for consequential damages.

In his answer, Nelson alleged that the work performed was completed in a good and workmanlike manner in compliance with construction standards in the area and that any claims made by the Thurstons were the result of their interference and refusal to allow Nelson to complete the contract. Nelson denied any negligence and alleged that he was not responsible for the hiring, supervision, or payment of any other contractors or subcontractors who performed labor or provided material to complete the construction. Nelson denied the nature and extent of the damages alleged by the Thurstons and denied that they suffered any personal injury to their health by reason of any mold on the premises.

A jury trial was held in the district court beginning on December 17, 2012, and over the course of the 5-day trial, the jury heard testimony from the parties and various witnesses as to the construction work performed by Nelson for the Thurstons and the alleged structural defects and mold damage. The court received numerous photographs and other documentary exhibits into evidence as well. The bill of exceptions, excluding exhibits, is nearly 1,200 pages long. For the sake of brevity and due to the nature of the assignments of error on appeal, we decline to further summarize the evidence here. We have set forth additional facts as necessary to our resolution of this appeal in the analysis section below. We note that Nelson made a motion for directed verdict, which the court granted only to the extent that the Thurstons sought personal injury damages for severe emotional distress, because it found no evidence supporting such a claim.

On December 21, 2012, the jury returned a verdict for Nelson. The district court accepted the verdict and entered judgment in favor of Nelson and against the Thurstons. The Thurstons subsequently perfected their appeal to this court.

### III. ASSIGNMENTS OF ERROR

The Thurstons assert that the district court erred in (1) excluding testimony from a particular expert witness, (2) failing to give separate or alternate jury instructions on their claims for negligent construction and implied warranty, and (3) giving instructions that did not allow the jury to find for the Thurstons on a theory of recovery other than breach of contract.

### IV. STANDARD OF REVIEW

[1,2] A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Fox v. Whitbeck*, 286 Neb. 134, 835 N.W.2d 638 (2013).

[3] Whether a jury instruction is correct is a question of law, which an appellate court independently decides. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

### V. ANALYSIS

#### 1. EXPERT WITNESS TESTIMONY

The Thurstons assert that the district court erred in excluding testimony from their expert Darin Wilkerson as to whether Nelson's work was performed in a workmanlike manner.

Wilkerson is a general contractor, is a member of a professional builders' association, and has been in the construction business since 1988. Wilkerson testified that he was generally acquainted with the workmanship of homebuilders in western Nebraska. He was contacted by the Thurstons in February 2011, and as a result of that contact, he made a visual

inspection of the perimeter and the interior of both the addition and the existing residence. Wilkerson inspected the premises in greater detail a couple of weeks after his initial visit and again in November 2012.

When the Thurstons' attorney asked Wilkerson if, based on his inspection, he reached any conclusion as to whether Nelson's work was completed in a workmanlike manner, Nelson's attorney requested a bench discussion, which was held outside the hearing of the jury. During the discussion, Nelson's attorney represented to the court that, based on the expert witness report, Wilkerson was supposed to be called to testify as to the cost of remediation and that no opinions about workmanship were disclosed in the report. At the conclusion of the discussion, the court stated, "All you have in here is cost, there's nothing about workmanship. Just limit it to that." Wilkerson then proceeded to testify that his estimate of costs to reconstruct the addition and return the existing structure to its original condition would be $240,360. He also opined that it would not be economically feasible to repair the addition. An exhibit received in evidence from Wilkerson's company included descriptions of proposed construction work on the Thurstons' home and the cost of such work, but it did not include any opinions regarding the nature of Nelson's work.

After the conclusion of Wilkerson's testimony, the Thurstons' counsel sought permission to recall Wilkerson, directing the court's attention to previously filed expert witness lists, which disclosed that Wilkerson was expected to opine, among other things, about the construction work that was not done in a workmanlike manner. After further argument from the parties, the court denied the motion to recall Wilkerson as a witness, finding that even if the matter was adequately disclosed, the testimony would be cumulative because two previous expert witnesses called by the Thurstons had already testified on the issue of workmanship. The record shows that two separate structural engineers testified at trial about the workmanship issues with Nelson's construction. Additionally, a masonry contractor opined that the foundation work was not done in a workmanlike manner.

[4] The Thurstons did not make an offer of proof with respect to the exact testimony they sought to elicit from Wilkerson. Neb. Rev. Stat. § 27-103 (Reissue 2008) provides that error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected and, in case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. The Nebraska Supreme Court has stated that in order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited. *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008).

In their brief on appeal, the Thurstons argue that Wilkerson's testimony "would have outlined to the jury that [Nelson] breached his duty of care which he owed to the [Thurstons]." Brief for appellants at 22. However, the substance of this asserted evidence was not made known to the trial judge, and it is not apparent from the record before us. As mentioned previously, the exhibit from Wilkerson did not include any discussion of the standard or duty of care allegedly owed to the Thurstons or allegedly breached by Nelson. Further, when the trial judge noted the cumulative testimony previously given by two other expert witnesses on the issue of Nelson's workmanship, the Thurstons did not make an offer of proof indicating how Wilkerson's testimony might differ.

[5,6] To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Martensen v. Rejda Bros.*, 283 Neb. 279, 808 N.W.2d 855 (2012). An improper exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *Cotton v. State*, 281 Neb. 789, 810 N.W.2d 132 (2011).

The Thurstons have not shown how they were prejudiced by the district court's denial of their motion to recall Wilkerson to testify about Nelson's workmanship. Because there was no offer of proof made and the evidence disallowed was not

apparent from the context of the questions asked, we cannot say that the district court erred in excluding Wilkerson's testimony regarding workmanship and in finding that such testimony would have been cumulative to other substantially similar evidence which was admitted without objection. This assignment of error is without merit.

### 2. Jury Instructions

The Thurstons assert that the district court erred in failing to give separate or alternate jury instructions on their claims for negligent construction and implied warranty. They also assert that the court erred by giving instructions that did not allow the jury to find for the Thurstons on a theory of recovery other than breach of contract.

[7,8] To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012). If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal. *Id.*

A jury instruction conference was held on December 21, 2012. The final instructions prepared by the district court included the following statement of the case instruction, instruction No. 2, to which the parties had no objection:

Instruction No. 2

**STATEMENT OF THE CASE -
BREACH OF CONTRACT**

**I. Plaintiff's Claims**

**A. ISSUES**

This case involves the construction of an addition to an existing home. The [Thurstons] claim [Nelson] entered into an oral contract under which [he] would construct an addition to the existing home and make certain improvements to the structure which already exists.

The [Thurstons] claim that [Nelson] breached the contract in one or more of the following ways[:]

1. By not completing the construction agreed to in a reasonable time;

2. By failing to complete the construction in a good and workmanlike manner and in conformance with construction standards in the following particulars:

A. Failing to construct the foundation according to building code and workmanlike practices;

B. Failing to supervise subcontractors;

C. Failing to protect the property from elements, particularly rain, when construction work left the property exposed to elements;

D. Failing to use proper dimension lumber, beams or support systems for the structure;

E. Failing to assess load bearing capacity of existing structure or providing adequate structural support for new construction or joining existing structure;

F. Failure to use venting where reasonably required[.]

The [Thurstons] also claim that they were damaged as a result of this breach of contract, and they seek a judgment against [Nelson] for these damages.

[Nelson] admits that the parties entered into a contract, but alleges that [the Thurstons] contracted with [Nelson] to provide for the construction of the addition, excluding plumbing, heating, air conditioning, electrical and shingling the new addition and the old home.

[Nelson] denies that he did not complete the work in a good and workmanlike manner and in conformance with construction standards in the area that the work was performed.

[Nelson] alleges that the [Thurstons] interfered with and frustrated his ability to complete the contract and [that the Thurstons] thereby breached the contract between the parties. [Nelson] further alleges that the [Thurstons] were the general contractor on the project and were responsible for hiring, supervision and payment of any other contractors or subcontractors who performed labor or provided material to complete the construction.

## B. Burden of Proof

Before the [Thurstons] can recover against [Nelson] on their claim, [they] must prove, by the greater weight of the evidence, each and all of the following:

1. That the [Thurstons] and [Nelson] entered into the contract;

2. The terms of the contract;

3. That [Nelson] breached the contract in one or more ways claimed by [the Thurstons];

4. That the breach of contract was a proximate cause of some damage to [the Thurstons]; and

5. The nature and extent of that damage.

## C. Effect of Findings

If the [Thurstons] have not met this burden of proof, then your verdict must be for [Nelson], and you should cease any further deliberations.

On the other hand, if the [Thurstons] have met this burden of proof, then you must consider [Nelson's] affirmative defense.

The remaining portion of instruction No. 2 outlined the issues, burden of proof, and effect of findings with respect to Nelson's defenses.

The final instructions prepared by the court also included instruction No. 3, which provided:

If you find that there was a contract, then the law makes the following terms part of the contract:

1. Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done. A failure to observe any of these conditions is a breach of contract.

2. The law implies that a building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for its intended purpose.

3. Every contract for work or services includes an implied duty to perform skillfully, carefully, diligently, and in a workmanlike manner, and by taking a job, one contracts that he has the requisite skill to perform it.

4. The implied covenant of good faith and fair dealing exists in every contract and requires that none of

the parties to the contract will do anything which will injure the right of another party to receive the benefit of the contract.

Neither party objected to instruction No. 3.

We note that instruction No. 2 as given defines the case as a breach of contract case and requires that the Thurstons prove the existence of a contract (which Nelson admits), the terms of the contract, its breach, and damages that were proximately caused by the breach. However, instruction No. 2, under paragraph I.A.2. regarding the claimed failure of Nelson to complete the construction in a workmanlike manner, also included specific allegations of such failure in subparagraphs A. through F., which directly correspond to the allegations of negligence in the Thurstons' complaint. And instruction No. 3 included the allegations of breach of the implied warranty of workmanlike performance contained in the Thurstons' complaint. Thus, the court essentially combined the various allegations of the Thurstons' breach of contract, negligence, and breach of implied warranty of workmanlike performance into this one jury instruction.

The Thurstons proposed certain additional instructions with respect to negligent construction and implied warranty, which instructions we address further below.

### (a) Negligent Construction

[9] The Thurstons assert that the district court erred in failing to give separate or alternate jury instructions on their claim for negligent construction. A trial court, whether requested to do so or not, has a duty to instruct the jury on issues presented by the pleadings and the evidence. *Centurion Stone of Nebraska v. Trombino*, 19 Neb. App. 643, 812 N.W.2d 303 (2012).

At the instruction conference, the Thurstons first requested an instruction on professional negligence, pursuant to NJI2d Civ. 12.04. We find no error in the district court's decision not to give an instruction on professional negligence in this case. See *Churchill v. Columbus Comm. Hosp.*, 285 Neb. 759, 830 N.W.2d 53 (2013) (professional act or service defined as arising out of vocation, calling, occupation, or employment

involving specialized knowledge, labor, or skill, and labor or skill involved is predominantly mental or intellectual, rather than physical or manual).

The Thurstons also requested an instruction on damages to property in negligence cases found at NJI2d Civ. 4.20 to 4.24 (alternative instructions depending on whether repairs will restore property at cost lower than property's predamage value). The district court denied the requested instructions, finding that this case, as pled, is a contract action and that the damages were contract damages. On appeal, the Thurstons assert that they were prejudiced by not having a separate or alternative instruction on negligence in the event the jury found that a contract was not proved.

[10-12] The Thurstons set forth in their complaint "causes of action" for both breach of contract and negligence. A cause of action consists of the fact or facts which give one a right to judicial relief against another; a theory of recovery is not itself a cause of action. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012). Thus, two or more claims in a complaint arising out of the same operative facts and involving the same parties constitute separate legal theories, of either liability or damages, and not separate causes of action. *Id.* In this case, Thurstons' complaint contained separate legal theories of recovery, because their claims all arose out of the same operative facts and involved the same parties. In Nebraska, pleading alternative theories of recovery is permitted, and ordinarily, an election between theories of recovery will not be required unless the theories are so inconsistent that a party cannot logically choose one without renouncing the other. See *Kenyon & Larsen v. Deyle*, 205 Neb. 209, 286 N.W.2d 759 (1980).

While the Thurstons pled the alternative theories of breach of contract and negligence, the question becomes whether the court was required to instruct the jury on both theories of recovery.

[13,14] In order to decide the form of redress, whether contract or tort, it is necessary to know the source or origin of the duty or the nature of the grievance, and the character of the action must be determined from what is asserted concerning

it in the complaint. *Moglia v. McNeil Co*., 270 Neb. 241, 700 N.W.2d 608 (2005). Contract actions, which arise from a breach of a duty imposed on one by an agreement, protect a plaintiff's interest in or right to performance of another's promises, whereas tort actions, which arise from a breach of a duty imposed by law, protect a plaintiff's interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property. *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002). In the case before us, the Thurstons' negligence allegations relate to Nelson's construction work, which work is the object of the agreement forming the basis for the breach of contract claim.

The district court in this case determined that the breach of contract encompassed negligent construction and that based on the damages requested, it was a contract action. The Nebraska Supreme Court recently discussed the coexistence of tort and contract actions in *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012). In that case, the district court granted summary judgment to the defendant on the plaintiffs' negligence claim, finding that based upon the economic loss doctrine, the plaintiffs could only proceed under contractual theories of relief. On appeal, the Supreme Court recognized the general economic loss doctrine as a "'judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses.'" *Id*. at 118-19, 808 N.W.2d at 80. The court clarified the economic loss doctrine in Nebraska, however, limiting its application to the products liability context and to situations where the alleged breach is only of a contractual duty, and no independent tort duty exists. The court stated:

> [W]hen the alleged breach is of a purely contractual duty—a duty which arises only because the parties entered into a contract—only contractual remedies are available. . . . Thus, the doctrine serves to "weed[ ] out cases involving nothing more than an allegedly negligent failure to perform a purely contractual duty—a duty that would not otherwise exist."

*Id*. at 122, 808 N.W.2d at 82.

The court in *Lesiak* concluded that where a plaintiff is suing for breach of a contractual duty which would not have existed but for the contractual relationship, it should be brought as a breach of contract action and not as a tort claim. The court recognized that this conclusion was somewhat at odds with past statements in some of its case law. The court noted that under Nebraska law, with each contract comes an accompanying duty "'"to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done."'" *Id*., quoting *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85 (2000). The court in *Lesiak* also noted that it had previously stated that a breach of that duty may give rise to a breach of contract action or a tort action for negligent performance of the contract. The court indicated that it was now qualifying that statement to hold:

> Where only economic loss is suffered and the alleged breach is of only a contractual duty . . . , then the action should be in contract rather than in tort. In other words, the doctrine would apply to bar a tort action for the negligent performance of a contract when only economic losses were incurred.

*Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 123, 808 N.W.2d 67, 83 (2012). In sum, the court concluded that the primary purpose of the economic loss doctrine is to maintain the separateness of tort law and contract law. "Generally speaking, the doctrine limits a party's ability to recover for economic losses (or commercial losses), unaccompanied by personal injury or damage to other property, allowing recovery only under contract law." *Id*. The court expressly restricted the application of the doctrine to where economic losses are (1) caused by a defective product or (2) caused by an alleged breach of a contractual duty, where no tort duty exists independent of the contract itself. *Id*. The court went on to define economic losses as commercial losses, unaccompanied by personal injury or "'other property'" damage. *Id*. at 124, 808 N.W.2d at 83. The phrase "other property" means property other than the property that was the subject of the contract. *Id*.

In connection with their negligence theory of recovery, the Thurstons alleged that they suffered damages to the new

addition and to the existing structure in excess of $10,000; personal injury to their health, as well as consequential damages which included the loss of use and occupancy of their home; and severe emotional distress. However, the evidence adduced at trial related only to the economic losses allegedly resulting from Nelson's alleged failure to perform the work that he had agreed to do in a workmanlike manner. In other words, these are economic damages which can only be sought in a breach of contract action. See *Lesiak, supra*. Although the Thurstons' complaint sought damages for emotional distress and mental anguish, as well as personal injury to their health, there was no evidence adduced to support these damages and these claims were properly not submitted to the jury.

We conclude that the district court did not err in failing to give separate or alternate jury instructions on the Thurstons' claim for negligent construction. The basis of the Thurstons' negligence theory of recovery was Nelson's allegedly negligent failure to perform a purely contractual duty, which duty would not otherwise exist without the oral contract between the parties in this case. The damages for which evidence was adduced in this case were purely related to economic losses. In short, the evidence did not establish any duty or damages based on negligence that was not "coextensive with those encompassed" by the breach of contract theory on which the jury was instructed. See *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 353, 754 N.W.2d 406, 430 (2008).

This assignment of error is without merit.

### (b) Implied Warranty

The Thurstons assert that the district court erred in failing to give separate or alternate jury instructions on their claim for implied warranty.

[15,16] As a general rule, a contractor constructing a building impliedly warrants that the building will be erected in a workmanlike manner. *Moglia v. McNeil Co.*, 270 Neb. 241, 700 N.W.2d 608 (2005). The implied warranty of workmanlike performance provides the owner with an action against the contractor if the contractor's work is not of good quality and free from defects. *Id*.

[17] In building and construction contracts, in the absence of an express agreement to the contrary, the law implies that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993); *Henggeler v. Jindra*, 191 Neb. 317, 214 N.W.2d 925 (1974).

The Thurstons argue that they pled breach of the implied warranty to perform in a workmanlike manner as a separate cause of action and that, as such, an alternate instruction was justified. During the jury instruction conference, they directed the district court's attention to NJI2d Civ. 11.44. The court rejected the Thurstons' proposed instruction, concluding that the instructions as written adequately injected the issue of breach of implied warranty into the case on a breach of contract theory. The court also observed that NJI2d Civ. 11.44 concerns the sale of goods, which is not at issue in this case.

Pattern jury instruction NJI2d Civ. 11.44 addresses the burden of proof with respect to breach of an implied warranty of fitness for a particular purpose in the context of the sale of goods. The comments to the instruction show that it deals with only the implied warranty of fitness for a particular purpose under Neb. U.C.C. § 2-315 (Reissue 2001). Because this case does not involve the sale of goods or a claim under Nebraska's Uniform Commercial Code, the tendered instruction was not warranted in this case. As noted above, the district court instructed the jury that if it found there was a contract, the law made certain terms a part of that contract, including the implied warranty that a building would be erected in a reasonably good and workmanlike manner and would be reasonably fit for its intended purpose. The instructions given were a correct statement of the law and adequately covered the issues. We find no error.

### (c) Conclusion

The court did not err in refusing to give separate or alternative instructions on the negligence or implied warranty theories of recovery.

## VI. CONCLUSION

The district court did not abuse its discretion in limiting the testimony of one of the expert witnesses and did not err in refusing to give separate jury instructions on the negligence or implied warranty theories of recovery.

AFFIRMED.