IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KOETTER V. KOETTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

GREGORY D. KOETTER, APPELLEE,

V.

BRIAN C. KOETTER AND BENJAMIN J. KOETTER, APPELLEES,
AND DAVID M. KOETTER, APPELLANT.

Filed December 18, 2018.    No. A-17-1066.

Appeal from the District Court for Red Willow County: DAVID W. URBOM, Judge. Affirmed.

Tawna Holmstedt, of Law Office of R. Kevin O'Donnell, P.C., L.L.O., for appellant.

Brock D. Wurl, of Norman, Paloucek, Herman & Wurl Law Offices, for appellee Gregory D. Koetter.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

Gregory D. Koetter sought partition in the district court for Red Willow County of certain real property which he and defendants Brian C. Koetter, Benjamin J. Koetter, and David M. Koetter owned as tenants in common. The court ordered the sale of the property, and David appeals the court's order, which confirmed the sale. For the reasons set forth herein, we affirm.

BACKGROUND

This appeal involves the partition by sale of certain real property located in Red Willow County, north of McCook, Nebraska. The parties are brothers who inherited the property from

their father. The property in question consists of three noncontiguous parcels, which was divided into six parcels for sale. The property includes a mixture of both irrigated and dry crop land, native pasture, and two building sites, one of which includes an on-site feedlot. There is access to all parcels via highway or county roads. Prior to the sale, the parties each owned an undivided one-quarter interest in the property.

Gregory filed a complaint for partition in the district court pursuant to Neb. Rev. Stat. § 25-2170 (Reissue 2016), naming Brian, Benjamin, and David as defendants. He sought an order confirming the parties' one-quarter shares of ownership in the real property at issue, a judgment of partition, appointment of a referee, sale of the property pursuant to Neb. Rev. Stat. §§ 25-2183 and 25-2185 (Reissue 2016) if the property could not be physically partitioned by the referee, determination of the rights of any tenants or holders of any encumbrances, as well as costs and attorney fees.

Gregory thereafter filed a motion for summary judgment. Gregory alleged that he had given proper notice to all interested parties and that the defendants had not answered the complaint. He asked the district court to grant summary judgment, confirming the shares of ownership and the existence of all encumbrances as pled in his complaint. Gregory also filed a motion for the appointment of a referee, asking the court to appoint a particular individual to serve as referee for the partition of the real property.

Following a hearing, the district court entered an order for summary judgment. The record on appeal consists of a transcript only and does not include a bill of exceptions for any hearings held in this case; however, the court's order notes that Gregory was represented by his attorney at the hearing and David appeared pro se. Brian and Benjamin did not appear in person or by attorney at the hearing. The court granted Gregory's motion for summary judgment, confirming the ownership of the real property, the shares of ownership, and the existence of all encumbrances as pled in the complaint. The court also granted Gregory's motion for appointment of a referee, although it appointed a different individual than the one requested by Gregory.

The referee filed a report and motion for hearing. In the report, the referee stated he had been a licensed attorney in Nebraska since 1974 and was generally familiar with dryland and irrigated crop ground and pasture ground in Red Willow County. Although the referee did not physically inspect all of the real property at issue due to its "extensive nature," in making his report he referred to "County Assessment sheets," which provided "extensive information" regarding the property. He also based his report on his inspection of selected tracts, his personal knowledge of "real estate utilized for agricultural purposes in southwest Nebraska," reference to selected portions of "the appropriate real estate records," and discussions with Gregory's attorney. The referee reached the following conclusions:

A. The real estate which is subject to this action is extensive in nature and varies among major types of soil and the major types of agricultural uses of real estate in southwest Nebraska.

B. There are substantial issues to be resolved by the parties and failure to resolve said issues by the recently completed court case and entry of Summary Judgment suggests that the parties are unable to continue to own this real estate as tenants in common.

C. The total amount of the real estate could not be partitioned in kind due to its variable nature within specific tracts and therefore an attempt to do so would prejudice one or the other of the parties.

D. The inability of the parties to own the premises in common and the variable nature of the premises prohibiting division in kind require that the property be sold and the proceeds of the sale be delivered to the Clerk of the District Court of Red Willow County, Nebraska to abide the Order of Division of said proceedings among the parties by the District Court.

A hearing was held on the referee's report at which Gregory appeared with his attorney and David was present pro se. Following the hearing, the district court entered an order for sale of the property. In the order of sale, the court observed that no pleadings had been filed in response to the referee's report, and it found that the real property at issue was extensive in nature, varying among major types of soil and agricultural uses, that the "substantial issues" to be resolved by the parties and their failure to resolve those issues indicated that they could no longer own the property as tenants in common, that the property could not be partitioned in kind due to its variable nature within specific tracts, and that an attempt to do so would prejudice the parties. Accordingly, the court ordered that the property be sold with the proceeds delivered to the clerk of the district court to await division among the parties by the court.

A sale of the real property was held on April 11, 2017. According to the referee's report on the sale, the property was divided into in six parcels based upon their use and location and sold for a total purchase price of $1,630,000. The sale was attended by approximately 86 people, and there were 18 registered bidders. The auctioneer solicited a bid on all six tracts combined, and the only bid received was "significantly less than the sum of the bids on the totals of six tracts." According to the referee, there "were not [any] external events which adversely impacted the attendance and the sale and none which adversely impacted the amounts bid." The referee stated that the sale was made "in all respects and conformities of law and the amount of the bid was fair value of the property under the circumstances and conditions of the sale." He also stated that a subsequent sale would not realize a greater amount. The property was purchased by three separate high bidders (David; Benjamin, Brian, and Gregory; and Lee McConville) and divided in three separate parts although it is not clear from the record how the six parcels were divided among them. After the sale, the high bidders each deposited $326,000, which was 20 percent of their bid, with the clerk of the district court.

On April 24, 2017, David, now represented by counsel, filed a motion, seeking to set aside the sale for lack of proper publication pursuant to § 25-2185 and Neb. Rev. Stat. § 25-1529 (Reissue 2016). The district court entered an order on April 26, granting David's motion and ordering the refund of the down payments made by the successful bidders at the sale. The court also appointed a second referee due to the resignation of the first referee. The court ordered the completion of a survey to determine the boundary between parcels 1 and 2 before the next attempt to sell the property. Finally, the court appointed the same individual appointed referee as receiver for the property, and authorized him to enter into lease agreements for the 2017 season. For simplicity, we refer to this individual, in both capacities, as "the second referee."

The district court subsequently entered an order approving certain leases of the property, specifically a pasture lease negotiated by the second referee with Benjamin, a pivot tower lease with David, and a crop land lease with a third individual. The court also authorized the second referee to pay the first half of the 2016 real estate and occupation taxes on the property.

The second referee filed a report in the district court. In preparing his report, the second referee met with Gregory's attorney and spoke by telephone with David's attorney and Benjamin. He did not meet or speak with Brian. In his report, the second referee noted "his duty to divide the subject property in kind, if an equitable division can be made" and observed that the primary problem in dividing the property equally between the parties was "the wide variety of land types and uses, coupled with the difficulty in dividing the land in four equal parts." The second referee inspected the real property, which at the time of his inspection was being used to grow crops and graze livestock. He noted that the topography was "varied, with part nearly level and part rough with canyons cutting through parts of the land."

Given the problems with partition in kind, the second referee contacted real estate firms for proposals to sell the property and received proposals from two firms, including the one that conducted the first sale. The second referee recommended retaining the same real estate firm to conduct a second sale for reasons including that firm's familiarity with the property and the favorable price generated by the previous auction. The second referee noted that a survey was not completed prior to the first sale to define the boundary between parcels 1 and 2, which he stated may have led to confusion as to whether certain improvements were included in parcel 1 or parcel 2 and making it difficult to determine the acreage in each of the six parcels. The second referee noted that a survey had since been completed. After reviewing the survey and consulting with the real estate firm, the second referee recommended that the "east improvement site" be sold as part of parcel 1, which would allow the purchaser of that parcel the use of "the building, corrals, feedlot and livestock water well," and that the "west improvement site" be sold as part of parcel 2, which would allow the purchaser of that parcel to use "the building site and livestock water well." The referee noted that a revised survey had been ordered and that the revised legal description would be used in conducting the second sale.

In his report, the second referee noted that the only encumbrances on the title to the property were two judgments in favor of Gregory against David. In the event any amounts were still owed under such judgments at the time of closing on the second sale, the second referee intended to pay the amount owed under such judgments as allowed under Neb. Rev. Stat. § 25-2191 (Reissue 2016). The second referee also noted an issue with respect to the reimbursement of advertising fees incurred by the real estate firm in conducting the first sale, which the district court needed to address. Finally, the second referee recommended that the real property be sold rather than divided in kind because of the nonhomogeneous nature of the land. He stated:

> Specifically, part of the land is irrigated, part is dry land, part is pasture, and part is improved by a building site and feedlot. Without an appraisal of each parcel and an agreement of the parties for payment of 'boot,' it appears almost impossible to come up with an equitable division into four parts.

David filed an objection to the second referee's report, specifically objecting to the recommendation that the second sale be conducted by the same real estate firm that conducted the first sale and providing several reasons for his objection. He referenced the lack of a survey before the first sale and alleged that the broker did not conduct the sale in a professional manner. He also asserted that the real estate firm's estimated advertising expenses of $9,325.39 for the second sale, in addition to the $16,359 incurred for the first sale, was "a substantial amount of money." David did not object to the second referee's other recommendations, including the recommendation that the property be sold rather than partitioned in kind. On July 28, 2017, the district court entered an order, approving the second referee's report and directing the sale of the property. In doing so, the court found that "the facts in the report are true and that actual partition and division of the real estate concerned cannot be made without greatly prejudicing its owners."

Gregory filed a motion for determination of personal property. Gregory alleged that there were certain items of personal property on, or previously on, the real property, which David claimed belonged to him personally. Gregory alleged that the parties had been unable to agree as to the ownership of these items and asked the court for an order determining ownership of the items of personal property which were in dispute. The second referee joined in Gregory's motion. An evidentiary hearing was held on Gregory's motion, at which Gregory was represented by his attorney, David appeared with his attorney, and the second referee appeared. After the hearing, the district court determined that the following personal property was owned by David: unattached gates and all portable panels; pile of unattached and loose oil pipe and rod; haying equipment; three fuel tanks, two alleyways, and hydraulic equipment and chute in calving barn; four tower pivot, panel box, and wiring; wood posts and wire; and two 6-foot aluminum water tanks. The court found that the following property should be transferred to the purchaser after the second sale: gates attached to posts, concrete water tank, concrete feed bunks at calving barn, guardrail "bunkline" and posts, and irrigation pipe.

A second auction of the real property was held on September 12, 2017. The property sold in six parcels for a total price of $1,395,000. Specifically, parcels 1 and 4 were sold to "C77 Cattle Co." for $570,000; parcel 2 was sold to Brian Hauxwell for $625,000; parcel 3 was sold to Arthur Ruggles for $110,000; parcel 5 was sold to McConville for $40,000; and parcel 6 was sold to Todd D. Koetter and Lisa Koetter for $50,000. Prior to the sale, the second referee filed an affidavit, indicating that proper notice was given as to this second sale.

Following the second sale, the second referee filed a motion to confirm the sale, stating that the sale was conducted in compliance with Nebraska law and was adequately advertised in such a way as to obtain the highest sale price possible. The second referee stated that the weather on the sale date was clear and did not impede attendance by any potential bidders. He also stated that the sale was conducted by the real estate firm in a professional manner and that active bidding took place on most parcels. The second referee stated that the sale was made in conformity with law, the amount of bid was fair under the circumstances and conditions of the sale, and a subsequent sale would not realize a greater amount. David filed an objection to the second referee's motion to confirm, alleging that the second sale did not obtain the highest possible sale price "as noted by the difference in the sale price from the first sale." David asserted his belief that a

subsequent sale would realize a greater amount. Following a hearing, the district court entered an order on September 19, 2017, overruling David's objection and confirming the second sale.

On October 10, 2017, David filed a notice of appeal, appealing the district court's order confirming the sale.

Gregory asserts that David's appeal is moot because of the sale and certain procedural actions following the filing of the notice of appeal, which are contained in the supplemental transcript. On November 10, 2017, the second referee filed a motion for order approving costs of sale and for distribution of sale proceeds. The referee asserted that the sales had closed on November 1 and that the net proceeds of the second auction were being held in a trust account. Subsequently, David filed a motion to stay the district court proceedings pending appeal. David alleged that if the funds from the second sale were disbursed, it could potentially harm the parties and that it would be "virtually impossible" to collect disbursed funds in the future. Gregory filed an objection, asserting that David's motion for a stay sought to "receive the benefit of posting a supersedeas bond without having actually posted said bond." The second referee also filed an objection, in which he asserted that title had been transferred to the high bidders on November 1 with the sale proceeds being deposited in a trust account awaiting disbursement to the parties. On December 26, the court entered an order ruling on various postjudgment motions. The court found that David did not file a supersedeas bond after filing his notice of appeal, and it accordingly denied his motion to stay proceedings pending appeal. The court also granted the second referee's motion for order approving costs of sale and after ordering the payment of certain fees and costs, ordered that the balance of the sale proceeds be distributed to the parties.

## ASSIGNMENTS OF ERROR

David asserts that the district court erred in (1) granting a partition for sale instead of a partition in kind, (2) confirming the second sale because the second referee improperly divided the property, and (3) allocating David's personal property to the purchaser.

David argues but does not assign that the court erred in confirming the sale because the second auction resulted in a sale $235,000 less than the first auction. David did not specifically assign this as error, and we do not address this argument further, except as it relates to his second assigned error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018).

## STANDARD OF REVIEW

A partition action is an action in equity and is reviewable by an appellate court de novo on the record. *Zornes v. Zornes*, 292 Neb. 271, 872 N.W.2d 571 (2015). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

ANALYSIS

*Mootness.*

Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction. *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018). While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Id.* Accordingly, we first address Gregory's argument that David's appeal is moot because, following David's failure to post a supersedeas bond, the sales resulting from the second auction have closed, the sale proceeds have been disbursed, and the new owners have taken possession of the real property. Gregory argues that undoing the second sale "would create a quagmire of unwinding and re-transferring Deeds." Brief for appellee at 12.

An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. *Id.* A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights--i.e., a case in which the issues presented are no longer alive. *Id.* Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation. *Id.* Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction. *Id.* As a general rule, a moot case is subject to summary dismissal. *Id.*

In his objection to David's motion to stay the proceedings, the second referee indicated that title to the real estate had been transferred to the high bidders on November 1, 2017. In its December 2017 order ruling on postjudgment motions, the district court granted the second referee's motion for order approving costs of sale and ordered the second referee to distribute the net sale proceeds to the parties. Because David did not file a supersedeas bond, the court denied his motion to stay the sale.

Neb. Rev. Stat. § 25-1916 (Reissue 2016) provides in part:

No appeal in any case shall operate as a supersedeas unless the appellant or appellants within thirty days after the entry of such judgment, decree, or final order execute to the adverse party a bond with one or more sureties . . . as follows:

. . . .

(3) When the judgment, decree, or order directs the sale or delivery of possession of real estate, the bond . . . shall be in such sum, not exceeding the lesser of fifty percent of the appellant's net worth or fifty million dollars, as the court . . . shall prescribe, conditioned that the appellant or appellants will prosecute such appeal without delay, will not during the pendency of such appeal commit or suffer to be committed any waste upon such real estate, and will pay all costs and all rents or damages to such real estate which may accrue during the pendency of such appeal and until the appellee is legally restored thereto[.]

The issue here is whether David's appeal was mooted by the subsequent transfer of the property to the buyers and the disbursement of the proceeds of the second auction. David assigns error to the granting of the partition for sale instead of in kind, and to the manner in which the real and personal property was divided. The relief he seeks is for this court to reverse the order to distribute

his personal property and the order confirming the referee's sale, and to remand the case to the district court to approve a subsequent auction. However, without a supersedeas bond having been filed, the real and personal property have been sold, title has been transferred, and the sale proceeds have been distributed.

In this case, the issues are not necessarily moot in the true sense of that doctrine, rather; the difficulty is the relief requested by David, which is perhaps unattainable, or at least complicated, given the closing of the sale and the lack of supersedeas bond. We nevertheless decline to dismiss the appeal for mootness and turn to the merits of David's arguments on appeal.

*Partition by Sale or In Kind.*

David asserts that the district court erred in granting a partition for sale instead of a partition in kind. David's counsel admitted at oral argument in this case that there was not an objection to the partition in kind in the court below and that the issue is being raised for the first time on appeal. This is consistent with our review of the record, which shows that David only objected to the second referee's recommendation as to which real estate firm should conduct the second sale. He did not object to the second referee's recommendation that the property be sold rather than partitioned in kind. We also note that David did not file an objection to the first referee's report, which similarly concluded that the property could not be partitioned in kind. In his complaint, Gregory raised the issue of the most appropriate way to partition the property. In his prayer for relief, Gregory asked that the property be sold if it could not be physically partitioned. David did not file an answer or any responsive pleading objecting to this request.

Absent plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted to it for disposition. *Maroulakos v. Walmart Associates*, 300 Neb. 589, 915 N.W.2d 432 (2018). Plain error is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

The purpose of a partition action is to divide a jointly owned interest in real property so that each owner may enjoy and possess in severalty. *Zornes v. Zornes*, 292 Neb. 271, 872 N.W.2d 571 (2015). Under Nebraska's partition statutes, the partition of the subject property may take one of two forms: (1) partition in kind, where the property is physically divided, or (2) partition by sale, where the property is sold and the sale proceeds are divided. *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012). The statutory ground for a sale is a showing that partition cannot be made without great prejudice to the parties. See Neb. Rev. Stat. § 25-2181 (Reissue 2016) and § 25-2183. As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will, which, it has been said, should not be done except in cases of imperious necessity. *In re Estate of McKillip, supra*. It is generally held that until the contrary is made to appear, the presumption prevails that partition in kind is feasible and should be made, and that the burden is on those who seek a sale of the property in lieu of partition in kind to show the existence of a statutory ground for such sale. *Id.* A sale in partition cannot be decreed merely to advance the interests of one of the owners, but before ordering a sale, the court must

judicially ascertain that the interests of all will be promoted. *Id.* The generally accepted test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than the share of the money equivalent that could probably be obtained for the whole. *Id.*

While it is generally true that there is a presumption in favor of partition in kind, it is likewise true that the character and location of the property, or the amount of the interest sought to be assigned, or both, may be such that it will be presumed that partition in kind cannot be made. *Nordhausen v. Christner*, 215 Neb. 367, 338 N.W.2d 754 (1983). Here the record establishes that partition in kind was not feasible due to the character of the property and the difficulty of physically dividing the property into four parts of equal value. The district court did not commit plain error in ordering partition by sale.

*Second Referee's Division of Property.*

David asserts that the district court erred in confirming the second sale because the second referee improperly divided the real property. He argues that the second referee's division of the property into six parcels resulted in a lower aggregate purchase price. Specifically, David takes issue with the second referee's allocation of the east and west improvements between parcel 1 and parcel 2. He argues that "the highest bid was not received because of the way the improvements were split between parcel 1 and parcel 2" and that if the improvements had been "switched," a higher price would have been received. Brief for appellant at 15.

It is the general rule that confirmation of judicial sales rests largely within the discretion of the trial court, and will not be reviewed except for manifest abuse of such discretion. *Fox v. Whitbeck*, 280 Neb. 75, 783 N.W.2d 774 (2010). David relies on case law concerning the receipt of an upset bid following a judicial sale. Generally, an upset bid following a judicial sale and before a final confirmation should be considered only when it affords convincing proof that the property was sold at an inadequate price and that a just regard for the rights of all concerned and the stability of judicial sales. *Deutsche Bank Nat. Trust Co. v. Siegel*, 279 Neb. 174, 777 N.W.2d 259 (2010). Of course, the present case does not involve such a situation. David's primary allegation is that the second sale should not be confirmed because the way in which the property was divided resulted in an inadequate sale price.

Inadequacy of price is not of itself sufficient to warrant a resale unless it appears that resale would probably produce a higher price. *Kleeb v. Kleeb*, 210 Neb. 637, 316 N.W.2d 583 (1982). When there is no evidence that others are willing to pay more, a judicial sale will not be set aside on account of mere inadequacy of price, unless such inadequacy is so gross as to make it appear that it was the result of fraud or mistake, or to shock the conscience of the court. *First Nat. Bank of York v. Critel*, 251 Neb. 128, 555 N.W.2d 773 (1996). Where the evidence establishes that the sale price was inadequate, it is the duty of the court to deny confirmation of a judicial sale. *Id.*

The record in this case does not establish that the sale price was inadequate or whether the price received was a direct result of the way in which the second referee allocated the improvements between parcels 1 and 2. David objected to the second referee's motion to confirm the second sale, alleging that the sale price, which was lower than the price obtained in the first sale, was not the highest possible sale price. An evidentiary hearing was held on the second

referee's motion and David's objection. The district court's order confirming the second sale indicates that the second referee appeared by telephone and both David and Gregory appeared by telephone "by and through" their respective attorneys. The court's order indicates that the second referee and the attorneys made statements and that the court received and "the Affidavit of Mike Lashley" offered by the second referee, as well as taking judicial notice, at the second referee's request, of a previously filed affidavit of the second referee. Because the record on appeal does not include a bill of exceptions for that hearing, we are unable to determine what arguments were made at the hearing or review the content of these affidavits. The only affidavit included in the transcript is the one filed with the court on August 30, 2017, from the second referee in which the referee indicates that proper notice was given as to the second sale. Absent a bill of exceptions to review, we are unable to determine if this is the affidavit judicially noticed by the court, and even if it is, it does nothing to establish that the price received at the second auction was inadequate. The affidavit received by the court is presumably one from someone associated with the real estate firm that conducted the sale (sale was conducted by Lashley Land and Recreational Brokers). But, again, absent a bill of exceptions, we are unable review this exhibit. It is incumbent upon the party appealing to present a record which supports the errors assigned. *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015).

In short, there is nothing in the record, beyond the evidence that an earlier sale received a higher price, to support David's assertion that the allocation of the improvements between parcels 1 and 2 in the second sale resulted in an inadequate sale price and that a different allocation would have resulted in a higher price at the time of the second sale. In his report, the second referee noted that a survey was not completed prior to the first sale to define the boundary line between parcels 1 and 2, which the second referee stated may have led to confusion as to what improvements were concluded with each parcel and which made it difficult to determine the acreage in each parcel. This uncertainty casts some question on whether the price received in the first sale accurately reflected the worth of the parcels as they were divided at that time. The record does support a conclusion that any such confusion was resolved by surveys conducted prior to the second sale, and it also shows that unlike the first sale, proper notice was given as to the second sale. Undoubtedly, any one or more of a variety of factors influenced the difference in the sale price between the two auctions, such as the time of year, market factors, and the specific combination of individual bidders in attendance at both auctions. Based upon the record before us, we cannot say that the district court abused its discretion in confirming the second sale.

*Allocation of Personal Property.*

David asserts that the district court erred in allocating his personal property to the purchaser. In ruling on David's motion for determination of personal property, the court found that the following property should be transferred to the relevant purchaser: gates attached to posts, concrete water tank, concrete feed bunks at calving barn, guardrail "bunkline" and posts, and irrigation pipe.

David argues that these items of personal property belong to him, were used by him and his father in their farming partnership for over 40 years, and should not have been transferred to the purchaser of the real estate upon which they were located. He also argues that Gregory

"presented an oral argument by his attorney regarding the personal property [at the hearing on David's motion], but provided no proof of ownership of any of the items that the Court determined to be sold with the land." Brief for appellant at 18. David argues that none of the items of personal property at issue in this case became a part of the real estate "because they were all removable fixtures." *Id.* at 17.

The district court determined which items of personal property belonged to David and which should be sold with the real estate at the second auction following an evidentiary hearing. As with the other hearings in this case, the record on appeal does not include a bill of exceptions, so we are unable to determine what evidence concerning the personal property might have been presented at the hearing on David's motion. As noted above, David makes certain assertions in his brief on appeal about the personal property and what took place at the hearing. However, a party's brief may not expand the evidentiary record. *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017). Based on the record before us, we are unable to say that the court erred in its division of the personal property.

## CONCLUSION

The district court did not err in ordering partition by sale and did not abuse its discretion in confirming the second sale. Based on the record before us, we are unable to say that the court erred in its division of the personal property at issue.

AFFIRMED.